## In re State College School District

*W. W. Litke*, for appellants.

*Campbell & Miller*, for school district.

WALKER, P. J., September 24, 1948.—This is an appeal from Resolution No. 1 of the School District of the Borough of State College, enacted June 14, 1948,

pursuant to the provisions of the Act of June 25, 1947, P. L. 1145.

When this appeal was taken 16 reasons were given why the appeal should be sustained. However, since the testimony was taken and oral arguments had pursuant thereto, the court has been informed that all the reasons have been withdrawn with the exception of the following:

"A. The resolution and tax are illegal, unconstitutional, excessive, and unreasonable because their manifest purpose is to provide a fund to sink a debt contrary to article IX, sec. 10, of the Constitution of Pennsylvania, and contrary to the Municipal Borrowing Law and the School Code.

"B. The floating indebtedness of the school district should be retired by means of a bond issue and not by means of the wage tax.

"C. The resolution imposing the tax is not 'general law' under article IX, sec. 1, of the Constitution of Pennsylvania."

From an examination of the law it is quite evident that most of the reasons advanced for the sustaining of this appeal, particularly those relating to constitutional questions, had already been decided by the Supreme Court of Pennsylvania, which action is binding upon all the lower courts of the State.

In various opinions of the Supreme Court, the court said in referring to this act, "At the outset, this Court is not concerned with the wisdom, need, or appropriateness of this legislation. Courts do not pass upon legislative wisdom but upon legislative power": English et al. v. Robinson Township School District et al., 358 Pa. 45.

The third reason advanced by appellants is, "The resolution imposing the tax is not a 'general law' under article IX, sec. 1, of the Constitution".

In the case above cited the court said at page 54:

"It must be remembered that statutes are presumptively constitutional and that courts must interpret them in that sense if possible; there is no difficulty in this case. Section 52, Statutory Construction Act 1937, P. L. 1019; Commonwealth v. Schuylkill Trust Company, 327 Pa. 127, 134, 193 A. 638."

The constitutionality of this act of assembly has been passed on by the Supreme Court and the same has been upheld. Acts similar, which conferred upon cities the right to pass ordinances imposing taxation, similar in nature to that provided for in this act of assembly, have likewise been held to be within the provisions of the Constitution both of the State and of the United States.

In the case of Dole v. Philadelphia et al., 337 Pa. 375, the court said at page 379:

"When the validity of an act or ordinance is attacked and a decision rendered sustaining it, it is fair to assume that all constitutional questions involved have been decided, whether or not they were raised in the pleadings or mentioned in the opinion: Turco Paint and Varnish Co. v. Kalodner, 320 Pa. 421 (428)."

Appellants in their third reason state that the resolution imposing the tax is not a general law under article IX, sec. 1, of the Constitution. This provision of the Constitution states:

"All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax and shall be levied and collected under the general laws."

In the case of English v. Robinson Township School District et al., 358 Pa. 45, it was alleged that this act of assembly constitutionally is repugnant to article IX, sec. 1, of the Pennsylvania State Constitution. Counsel in his brief states that the resolution adopted by the School District of the Borough of State College must be held unconstitutional for the reason that it levies and provides for the collection of a tax in one

school district of the Commonwealth and that said resolution is not a general law. This, according to the brief, is apparently the constitutional objection which is referred to hereinabove. In the case of English v. Robinson Township School District, already referred to, the Supreme Court at page 52 says:

"We find no support for the objection that the statute is repugnant to the requirement that all taxes shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general laws. The statute undoubtedly is general, effective, as it is, throughout the State excepting in cities of the first class, an exception permitted by the classification provision of the Constitution: Article III, Section 34. The school district's resolution now before us is general in its provisions and is effective throughout the territorial limits of the school district."

The court further said at page 53:

"There is nothing in the record to support that argument because the requirement is that taxes in the same taxing district shall be uniform on the same class of subjects, not that the taxing districts of the State must get together and agree upon the same tax for their respective districts. Compare Moore v. Pittsburgh School District, 338 Pa. 466, 13 A. 2d 29, in which we said, pp. 472-3, 'The Constitution does not say that taxes shall be uniform as to classes of municipal divisions of the State, but uniform territorially as the State is divided territorially into cities, counties, townships and school districts. . . We all know as a matter of fact that taxes are not uniform in the different school districts comprising a class and never have been. They are bound to be different because of varying local conditions. Under Minsinger v. Rau, there could have been a different tax in Philadelphia from that in Pittsburgh, the one could have been the

maximum impost of six mills and the other the minimum of five.' "

The resolution which has been adopted in the instant case states, "A resolution providing for the assessment, levy, and collection of a tax for school purposes, upon salaries, wages, commissions and other compensation earned or received on and after August 1, 1948, by residents of the School District of the Borough of State College, and on salaries, wages, commissions, and other compensation earned or received on and after August 1, 1948, by nonresidents of the School District of the Borough of State College, for work done or services performed or rendered in the School District of the Borough of State College, and on the net profits earned on and after August 1, 1948, of businesses, professions or other activities conducted by such residents, and on the net profits earned on and after August 1, 1948, of businesses, professions or other activities conducted in the School District of the Borough of State College by nonresidents".

From an examination of the title to this resolution, as hereinabove quoted, it would appear to the court that it is a general law, uniform in its nature upon the same class of subjects within the territorial limits of the School District of the Borough of State College. For this reason it is held that the same is not repugnant to article IX, sec. 1, of the Constitution of the State of Pennsylvania.

Reasons (A) and (B) which have been advanced for the upholding of the appeal will be considered together and are as follows:

"A. The resolution and tax are illegal, unconstitutional, excessive, and unreasonable because their manifest purpose is to provide a fund to sink a debt contrary to article IX, sec. 10, of the Constitution of Pennsylvania, and contrary to the Municipal Borrowing Law and the School Code.

"B. The floating indebtedness of the school district should be retired by means of a bond issue and not by means of the wage tax."

Article IX, sec. 10, of the Constitution states:

"Any county, township, school district or other municipality incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years."

An examination of the testimony discloses the fact that at the close of the fiscal year 1947-48 there was an indebtedness of $55,000, $15,000 of which was owing to the Peoples National Bank of State College and $40,000 to the First National Bank. According to the budget it was proposed that this item of $55,000 should be liquidated during the year 1948-49. $15,000 of this debt was incurred as a temporary loan to be repaid from tuitions due and any other receivable funds accruing during the year 1947-48. The evidence discloses that there was due $13,000 from various districts for tuitions for the year 1947-48 and $4000 for the transportation of students from Halfmoon Township. These amounts were not actually received during the school year of 1947-48. In addition the testimony discloses that during the fiscal year of 1947-48 there was an increase in salaries amounting to $40,973.

On July 5, 1947, the Governor of the State of Pennsylvania approved an act of assembly (P. L. 1266) which increased the minimum annual salaries of professional employes of school districts, which applies to school districts of the third class, of which the School District of the Borough of State College is a member. This increase, according to the testimony, was not reflected in the amount of professional employes' salaries appearing in the budget which was adopted for the year 1947-48. The act of assembly in section 1227 provides:

"In order to pay the additional amounts of salaries provided for by this act, the board of school directors or board of public education of any school district may for the fiscal year 1947 or 1947-48, as the case may be, revise its budget by increasing its appropriation or appropriations for salaries of professional employes of the school district for such fiscal year, the funds, therefor, may be provided from unexpended balances in existing appropriations from unappropriated revenue, if any, or from temporary loans."

The record discloses that on June 14, 1948, action was taken authorizing the secretary to adjust the budget and expenditures for the 1947-48 school year and that the budget was increased at that time sufficient to take care of the increase in professional salaries, which the testimony discloses was approximately $40,000. The testimony further shows that for this purpose the fiscal officers were authorized to borrow the sum of $40,000 and that item "B" of the budget of $49,170. In order to balance the budget for the which related to professional salaries should be revised. The $40,000 borrowed from the First National Bank of State College was pursuant to this authorization. Section 1227 of the Act of July 5, 1947, P. L. 1266, above quoted, authorized the financing of the increase in professional salaries by this method.

There is an additional indebtedness of $30,000 referred to in the testimony and it is an indebtedness which has been carried forward for several years. The testimony does not disclose that it is the intention of the school district to liquidate this particular item of $30,000 during the current year.

According to the revised budget for the year 1948-49, the total expenditures, as revised, amount to $362,246 which includes a debt service of $49,000. The total receipts amount to $362,246 which includes the loan of $30,000 above referred to and as an amount to be collected from the income tax, which is in controversy, of $49,170. In order to balance the budget for the

fiscal year 1948-49 these amounts are necessary. If the income tax is not included the budget would be out of balance to the amount of $49,170. For this reason the court does not find that the amount of this tax would be excessive. It will be noted that according to the budget it is the purpose of the school district to liquidate the sum of $49,000 of the indebtedness which was incurred during the past year due to the increased cost of professional employes and other unforeseen expenditures. The act of assembly, with reference to the increase of the salaries of professional employes, provided for the payment by temporary loans. When confronted with this emergency the School District of State College made temporary loans. That it was an emergency was so stated by the Supreme Court in the case of Dunkard Township School Tax Case, 359 Pa. 605, when the court said at page 609:

"In view of the emergency situation presented to the Board of School Directors arising from the duty imposed upon them of raising the funds necessary to pay the prescribed new salaries."

This would be a current expense and in no sense a capital outlay. The act of assembly in the use of the expression "temporary loans" contemplated that the same would be liquidated by taxation. The payment of these temporary loans by the imposition of the tax to be raised during the year 1948-49 must be argued pro and con but it has generally been the policy of municipalities to pay their current expenses out of current revenues and to create long term bonded indebtedness for capital outlay. The board of school directors, who are the representatives of the people, in the exercise of their discretion deemed it advisable to pay these particular obligations from taxes to be raised during this current year. This discretionary power is vested in the members of the school board and the court does not feel that it lies within the province of the court to disturb the judgment of the

legally elected representatives of the School District of State College in the exercise of their honest judgment. For that reason the court is unable to conclude that the tax is unreasonable.

This reason further contends that it is unconstitutional because the purpose is to provide for the sinking of a debt contrary to article IX, sec. 10, of the Constitution. What the school district is doing is levying a tax, which, with other taxes levied, will raise sufficient funds to liquidate a floating indebtedness already incurred by the school district. While it is true that ordinarily the tax would be imposed before the indebtedness is incurred, yet in the case of Ohlinger et al. v. Maidencreek Township et al., 312 Pa. 289, the court said at page 292:

"The Constitution does not grant the power to a municipality to incur indebtedness; the power comes from the legislature; it is limited by section 8, of article IX, and regulated by section 10. The latter is a command to the township to provide, by the method therein specified, funds for the payment of an indebtedness, which the legislature authorized within the limitation of the Constitution. The municipality's power is not therein affected, but rather its mode of exercise. The words 'at or before' are mandatory, but there is no provision stating that any indebtedness of the city shall be void if such a tax is not provided at or before the incurring thereof. The section is an explicit and express command to subdivisions of government to perform a duty, a duty which may be enforced by mandamus: Com. ex rel. Hamilton v. The Select and Common Councils of Pittsburgh, 34 Pa. 496; East St. Louis v. Amy, 120 U. S. 600. The right to mandamus after money on a loan has been secured indicates that the duty imposed by the Constitution is a regulation of the exercise of the power and does not qualify the power itself: section 10 is purely regulatory. In Dillon on Municipal Corporations, 5th ed., volume 1, sec-

tion 211, page 418, the author says: 'The general construction put upon these provisions is that they are qualifications and restrictions upon the power or mode of exercising the power of municipalities to become indebted; . . . We venture to observe that, so far as these and like decisions (see note for authorities) hold that the constitutional provisions quoted are mandatory, that they impose a duty upon the legislature in authorizing the creation of debt, to provide for the levy each year of a tax sufficient to pay the interest and to extinguish the principal at maturity, and that the duty thus imposed is absolute and may be enforced by mandamus or other appropriate remedy; their soundness is beyond question. But the Constitutions do not in general expressly provide that if the municipality does not at or before the time of creating a debt pass an ordinance levying such a tax, that such debt, if otherwise in all respects authorized and valid and for which the municipality has received full consideration, shall be void. If the debt is void, the failure of the municipal officers to do their duty is visited upon third persons, although these persons can enforce such duty in the courts just as effectually as if the duty enjoined by the Constitution or by statute had been reaffirmed and redeclared in a municipal ordinance or resolution. . . . It is not essential, where an ordinance is not expressly required, that the municipality itself should make provision by ordinance for the levy of the tax, as the insertion of the direction in the enabling or other statute that a sufficient tax be levied gives the bondholder the right to enforce the levy by mandamus or other suitable remedy. This sound view will probably have the effect to modify prior decisions in several States which assert, or assume, or proceed upon the view that a resolution or ordinance for the levy of the tax is in all cases a sine qua non to the validity of the debt.'

"The Act of 1874, P. L. 65, supplemented by the Act of 1915, was enacted to enforce the mandate of the

Constitution: Campbell v. Wilkins Twp., 273 Pa. 204. Obviously its provisions were not complied with. Hence, the municipality was without lawful authority to issue its notes and they are, therefore, invalid, and uncollectible: Bruce v. Pittsburgh, 166 Pa. 152.

"The debt of the township, however, was a lawful one and the money borrowed was applied to a proper purpose: Boro. of Rainsburg v. Fyan, 127 Pa. 74. The purpose of the indebtedness having been legal, the constitutional provision limiting the amount of indebtedness not having been violated, although the township failed to follow the prescribed regulation to make the evidence of indebtedness valid, the one furnishing the money to the municipality is not to lose by this neglect, nor is the township to profit. The party so lending the money is entitled to recover in assumpsit, formerly on a common count for money had and received."

What the Supreme Court said in the case just referred to, would be true in the case at bar. What the school district is attempting to do is to comply with the provisions of the Constitution which provide for the imposition of a tax to liquidate indebtedness. Ordinarily this is done prior to the time that the indebtedness is incurred. The purpose of the indebtedness having been legal, the action of the school district in imposing a tax to liquidate the indebtedness, would be a proper one. In the case of Graham v. Philadelphia et al., 334 Pa. 513, 526, the court said:

"Whatever may be the rule in other states, it has been positively established in this jurisdiction that legislative bodies may enter into transactions or agreements binding upon their successors which may require the levying of a tax in the future."

If the school district did not take some action to pay the obligation then an action of mandamus would lie to compel them to levy a tax to liquidate the same: Lehigh Coal and Navigation Company's Appeal, 112 Pa. 360.

The constitutional provision states that such a tax must be imposed which would provide for the payment of the obligation within 30 years. This is the maximum time which is permitted under the Constitution. It does not provide that it may not be paid off in a less period of time than 30 years. The school district, through its board of directors, has seen fit to impose taxes which would liquidate $49,000 of their temporary loans during the coming year, no doubt, on the theory that they should be paid in this manner because they related to current expenses. The school district, no doubt, in acting in the manner in which they did, realized that if current expenses are paid by long term bonds then when it would be necessary for the school district to make a capital outlay in their ever-expanding school program, it would not be able to do so because the limits of the indebtedness provided for in the Constitution would have already been used up in the payment of current expenses. This would not be considered a good policy to pursue.

The Act of Assembly of June 25, 1947, P. L. 1145, provides:

"It shall be the duty of the court to declare the ordinance and the tax imposed thereby to be valid unless it concludes that the ordinance is unlawful or finds that the tax imposed is excessive or unreasonable; but the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the rates of the tax."

The court is unable to conclude that the resolution in controversy is unlawful. The act of assembly states that ". . . the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the rates of the tax". It would be an interference with the reasonable discretion vested in the school district to perform its duties, in the manner in which it did, if the court would sus-

tain the appeal which was taken in this case, and for that reason the following order is entered:

And now, to wit, September 24, 1948, the appeal in the above-stated case is dismissed at the cost of appellants.

And now, to wit, September 24, 1948, an exception is noted and bill sealed for appellants.