# Crucible Steel Co. of America v. Luzerne Township School District

*Ray, Coldren & Buck, Ralph W. Demler, Frank W. Ittel, Carl E. Glock, Jr.,* and *Reed, Smith, Shaw & McClay,* for plaintiff.

*Eugene C. Sloan,* for defendant.

CARR, P. J., April 7, 1949.—This is a taxpayer's bill brought to restrain a third class school district from collecting a tax imposed by it under the Act of June 25, 1947, P. L. 1145, 53 PS §2015.1 et seq., upon the privilege of transporting into and dumping within the district waste material accumulated in the mining of coal from lands outside the district not contiguous to the wasting area.

Plaintiff, whose mine adjoins the district and is separated from its wasting area only by the waters of a river by which the district is bounded, contends, among other things: (1) That the tax is discriminatory in that producers of coal from lands within the district and also from lands beyond its boundaries if contiguous to the wasting area are exempted; (2) that it is excessive and unreasonable in that it imposes upon plaintiff a disproportionate part of the burden of local taxation, and (3) that it is invalid in that it was imposed after the tax levy for the current year had been formally and finally made.

### Findings of Fact

1. Crucible Steel Company of America, plaintiff, is a New Jersey corporation duly authorized to do business in Pennsylvania. For use in its primary business of manufacturing iron and steel, it mines coal from lands owned by it in Cumberland Township, Greene County, fronting on the Monongahela River, which forms the dividing line between Greene and Fayette counties. On this side of the river, in Luzerne Township, Fayette County, it owns and maintains in connection with its mine a wasting area of approximately 160 acres of surface lands, to which it transports, by means of an aerial tramway, slate, stone, dirt, and other similar waste material separated from the coal at the mine tipple.

2. The School District of Luzerne Township, defendant, is a school district of the third class, coextensive with the township.

3. On May 8, 1948, before a budget had been prepared, the board of school directors considered and voted as follows upon a proposal made to it with respect to taxes to be levied for the following fiscal year:

"Motion by Whiteko, seconded by D'Antonio, to tax all slate or refuse deposited in the township from any outside district or county as storage charges at 7 cents

per ton. All affirmative votes, 6. Attorney Sloan to look into it immediately. Tax to be effective first Monday in July, 1948."

4. On June 24, 1948, the school board formally and finally adopted an annual budget for the school year beginning on the first Monday of July 1948 and ending on the first Monday of July 1949, showing proposed expenditures of $314,742, and at the same time levied a tax of 30 mills on real estate and $5 per capita. The budget and tax resolution reads as follows:

"Resolved, That the Board of School Directors of the Luzerne Township School District, Fayette County, hereby authorizes the expenditures set forth herein during the school year 1948-49, and levies a tax of 30 mills per dollar ($3.00 per $100.00) of assessed valuation on real estate, and per capita tax of $5.00 per person, to provide the necessary revenue for the same. Ayes 6, Nos 0, 1 absent. Date 6-24-48."

The estimated receipts were stated as follows:

"Balance on hand July 5, 1948, general fund $2,143.92; property tax 1948 $144,000; per capita tax $15,500; delinquent tax (previous to 19—, $7,500; special tax $9,600; total receipts $314,742."

No special tax, however, nor any tax of any kind other than the property tax of 30 mills and the per capita tax of $5 was levied at that meeting.

5. On August 12, 1948, the school board adopted an additional tax resolution, reading in part as follows:

"That a tax for general revenue purposes is hereby levied and assessed at the rate of 7 cents per ton on the privilege of transporting and dumping or storing slate, stone, dirt, refuse, and other similar material, which is severed from the land in the mining of coal and, by or for the accommodation of the owner or operator of said mine, is transported into the township and dumped or stored on the surface of tracts of land within

the township, which tracts of land are not contiguous to any part of the tract or tracts of coal constituting a part of the mine where such severance occurs; that the tax shall be due and payable hereunder on the last day of the month succeeding the month in which the materials are transported and dumped or stored as aforesaid."

By the terms of the resolution the tax was imposed by virtue of the authority vested in the school board by the Act of June 25, 1947, P. L. 1145, and was to be effective from September 13, 1948, to July 1, 1949. Detailed provisions were made requiring monthly reports from all persons subject to the tax, and imposing penalties for nonpayment.

6. Plaintiff is the only producer of coal from lands outside Luzerne Township that is presently engaged in transporting mine waste into the township and dumping or storing it on the surface of lands therein. From September 13, 1948, to January 31, 1949, it transported into the township and dumped therein 114,-148.75 tons of such waste. By June 30, 1948, it will probably have so transported and dumped an additional 120,000 tons.

7. Producers of coal from lands within Luzerne Township have long been and still are engaged in transporting from their mine tipples to wasting areas owned by them therein and in dumping or storing thereon large quantities of slate, stone, dirt, and other waste material. Weirton Coal Company transports and dumps daily 3,000 tons thereof, and H. C. Frick Coke Company 500 tons.

8. The total valuation of all real estate in Luzerne Township as assessed for purposes of taxation is $4,800,000.00. Plaintiff's wasting area, which is the only property owned by it in the township, is assessed at $3,080.

*Discussion*

Section 502 of the School Code of May 18, 1911, P. L. 309, as amended, provides, subject to certain exceptions not here relevant, that "There shall be but one levy of school taxes made in each school district in each year"; and section 537 directs that all school taxes shall be levied and assessed during the month of April or May each year for the ensuing fiscal year. This means that after the tax has once been levied for the year, though tardily, no other or further tax can be assessed or levied for the same year: Appeal of Verona School District, 1 Monaghan 697. See also 2 Wharton Dig. 610, and Dunkard Township School Tax Case, 359 Pa. 605, 609. Accordingly when, on June 24, 1948, the school board adopted the budget for the year 1948-49 and at the same time levied the property tax of 30 mills and the per capita tax of $5, it thereby exhausted the taxing power that the legislature had delegated to it and could not subsequently impose any additional tax.

The action of the board on May 8, 1948, was manifestly ineffective as a tax levy, even if it had been so intended, since the proposed budget for the year had not yet been prepared, as required by section 563 of the School Code; until that was done there could be no valid levy. Nor could the mere reference in the budget adopted on June 24, 1948, to the "Special Tax" as a source of revenue constitute a levy. The formal resolution then adopted distinctly stated and conclusively determined the subjects of taxation for the year.

That the tax in question does unlawfully discriminate against plaintiff is apparent, since, though it purports to be imposed on the "privilege of transporting and dumping" mine waste, it exempts persons whose coal is mined within the township and also those whose coal is mined from lands outside the township if contiguous to the wasting area. This is a clear violation

of article IX, sec. 1, of the Constitution of this Commonwealth, which requires that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority imposing the tax, as well as a violation of the fourteenth amendment of the Federal Constitution, which prohibits any State from denying to any person within its jurisdiction the equal protection of the laws; such a tax must be imposed upon the practice of transporting and dumping mine waste and not against some of the persons who may be engaged in it: Sayre Borough v. Phillips, 148 Pa. 482; Commonwealth v. McKendry, 21 D. & C. 383; and see Commonwealth v. Girard Life Insurance Co., 305 Pa. 558, 562.

It is true that subjects of taxation may be classified, but classification may not be made arbitrarily either on the given subject of tax or the persons affected as payers. There must be a real distinction between the subjects constituting the different classifications, some substantial difference which bears a reasonable and just relation to the act in respect to which the classification is made: Schoyer et al. v. Comet Oil & Refining Co., 284 Pa. 189. Here the "privilege" exercised in the township by the local coal producers is exactly the same as that exercised by plaintiff. In both cases they are engaged in transporting and dumping mine waste in the township and also in both cases within the boundaries of their own lands. The only real distinction is that in the case of plaintiff the waste originates outside the township, and, as we have pointed out, discrimination on that basis in the exercise of the taxing power violates both the State and Federal Constitutions. Such classification could therefore only be sustained, if at all, as a police regulation for the protection of the public health and welfare, and only if made by the proper municipal authority. But the police power has never been extended to school districts. They are creatures of statutes, exercising only the functions

necessary to carry out the purposes for which they were created: Mulligan v. School District, 241 Pa. 204. Obviously the regulation of wasting areas has no connection with the operation of a system of common schools.

Moreover, it is to be seen that the tax on plaintiff's operations alone would amount to approximately $20,000 a year. This equals 13 percent of the revenue from all real estate taxes, and exceeds the total revenue from all other subjects of taxation that the school board has seen fit to levy upon. In our view a tax designed to raise so large a proportion of local taxes from a relatively minor operation of a single taxpayer is grossly excessive and unreasonable, if, indeed, in this particular case, it is not in fact so great in comparison to the economic value of the operation as to be prohibitive.

### Conclusions of Law

1. The action of the school board on May 8, 1948, does not constitute a legal levy of taxes.

2. The action of the school board on June 24, 1948, does not constitute a legal levy of any tax other than a tax of 30 mills per dollar of assessed valuation of real estate, and a per capita tax of $5.

3. The action of the school board on August 12, 1948, in levying an additional tax for the school year 1948-49 after the tax levy for the year had been made is illegal and void, as being a violation of section 502 of the School Code.

4. The tax imposed by the resolution of August 12, 1948, unlawfully discriminates against plaintiff.

5. The tax imposed by the resolution of August 12, 1948, is excessive and unreasonable.

6. Plaintiff is entitled to a decree enjoining and restraining the School District of Luzerne Township, its officers and agents, from enforcing or attempting to enforce the provisions of the resolution of August

12, 1948, and from collecting or attempting to collect any taxes thereunder.

### Decree Nisi

And now, April 7, 1949, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

1. That an injunction issue permanently enjoining and restraining the School District of Luzerne Township, its officers and agents, from enforcing or attempting to enforce the provisions of the resolution adopted by the school board on August 12, 1948, and from collecting or attempting to collect any taxes thereunder.

2. That defendant pay the costs of this proceeding.

The prothonotary is directed to enter this decree nisi, and to give notice of its entry to the parties or their counsel of record, and if no exceptions are filed within 10 days after notice, to enter it as the final decree, as of course.