## Brownstown Borough School District v. Department of Public Instruction

*Green, Gibson & Abood,* for plaintiffs.

*Ernest R. Walker* and *George M. Spence, Spence, Custer, Saylor, Wolfe & Rose,* for defendants.

McDONALD, J., September 21, 1965.—This matter is before the court on preliminary objections of the Department of Public Instruction, Commonwealth of Pennsylvania (hereinafter referred to as "department"), and the Interim Operating Committee of Ferndale Area School District (hereinafter referred to as "district"), defendants.

The complaint filed by the Brownstown Borough School District against the above and also the School Districts of the Boroughs of Ferndale, Dale, Lorain and Middle Taylor Township, avers plaintiff approved, in accordance with provisions of section 297, Act of August 8, 1963, P. L. 564, sec. 3, 24 PS §2-297, the establishment in advance of July 1, 1966, of the proposed school district contained in the plan of organization of administrative units approved by the Council of Basic Education, and which is now known as the Ferndale Area School District. The district was established on July 1, 1965, and on that date the Interim Operating Committee became the Board of School Directors. It further avers that approval of the advance establishment was induced by fraud, deceit, undue influence and mistake in that the Dale School District failed to reveal on a general information report disclosing valuations of property and other financial data, outstanding current operating indebtedness in the amount of $25,000, and Middle Taylor Township School District failed to disclose in said report that it did not own its building and equipment, but rather operated under a lease agreement requiring rentals of $4,100 per year.

In its prayer for relief, plaintiff requests the court: (1) to order the department to recall and cancel its certificate of advance establishment of the district; (2) to enjoin the operation of the district until the mandatory date of July 1, 1966: or in the alternative; (3) to order the district to revise its budget by eliminating the rental for building and equipment formerly used by Middle Taylor Township School District, and the current operating deficit of Dale Borough School District; (4) to direct the aforementioned two districts to levy a tax to assume the rental and the current operating deficit.

The preliminary objections which request judgment

be entered against plaintiff question (1) the jurisdiction of this court; (2) the capacity of plaintiff to bring this action, and (3) the sufficiency of the complaint to state a cause of action.

At the argument, and in its brief, plaintiff agrees the venue of an action against the department is in Dauphin County. It concedes, therefore, that its prayer to recall and cancel the certificate of advance establishment and to enjoin the operation of the district must be denied and judgment entered in favor of the department. However, it argues this court has jurisdiction of the remaining subject matter and the other defendants.

Rule 1503 (c), Pennsylvania Rules of Civil Procedure, governing the action in equity, provides:

"(c) An action against the head of an executive or administrative department, a departmental administrative board or commission or an independent administrative board or commission, or an officer or instrumentality of the Commonwealth may be brought in and only in Dauphin County."

Clearly, therefore, exclusive jurisdiction of actions against the department, an administrative agency of the Commonwealth, is in the Dauphin County courts, and venue is governed by the above rule.

District contends that the department is an indispensable party, and, therefore, under the holding of Merner v. Department of Highways, 375 Pa. 609, venue of the action is in Dauphin County, even though other parties named as defendants are within the jurisdiction of this court. It further contends that the legal existence of plaintiff and the School Districts of the Boroughs of Dale, Ferndale, Lorain and the Township of Middle Taylor terminated on July 1, 1965, when district became operative as a third class school district.

We agree the legal existence of the aforementioned

districts terminated on July 1, 1965, and hence they have no capacity to sue or be sued.

The clear intent of the Act of 1963 is to fulfill the mandate of article X, sec. 1, of the Pennsylvania Constitution of 1874, which requires the General Assembly to provide for "a thorough and efficient system of public schools". To carry out this mandate, the General Assembly enacted the Reorganization Act of August 8, 1963, P. L. 564, the purpose of which is to create appropriate administrative units.

Under section 292, the County Board of School Directors was required to prepare a plan of organization of administrative units for the county conforming to the standards adopted by the State Board of Education. While not averred in the pleadings, administrative unit 63-9, which comprises the former School Districts of Brownstown, Ferndale, Dale, Lorain and Middle Taylor Township, was designated a district to be mandatorily established (section 296) on July 1, 1966. Upon approval by the school boards of the said districts: section 297, the date was accelerated by advance establishment on July 1, 1965.

Upon establishment of a district, whether by mandate on July 1, 1966, or as here, July 1, 1965, all property, indebtedness and rental obligations of the "former School Districts" shall become the property, indebtedness and rental obligations of "such newly established School District": section 298. It is significant, too, that under section 303.1 (d), the directors in the former districts were only entitled to serve in an advisory capacity without vote until the end of their terms. The act provides that the interim operating committee shall, on the date of establishment, become the school board of the district, and subsequent elections of directors shall be at large, subject to provisions of section 303-(b), which provides for division of a district into regions.

It is obvious the legislature intended to and did supplant all former districts with a new administrative unit, now district. All property, indebtedness and rental obligations were vested in or became obligations of district. It is now a political subdivision which has all the benefits of, and is subject to, all the provisions of the Act of 1949.

We must conclude, therefore, that the former Districts of Brownstown, Dale, Ferndale, Lorain and Middle Taylor Township ceased to exist on July 1, 1965, and, therefore, have no capacity to sue or be sued.

District argues with merit that plaintiff may not invoke the equity powers of this court, since it has not and will not suffer damage or legal injury. This, of course, follows the rationale of nonexistence, and is strengthened by the fact that it has no property which is imperiled. As noted above, the property, by act of law, is turned over to the district and all debts and rental obligations assumed by it under section 298(a).

As if in anticipation of district's argument, a group of taxpayers and property owners, residents of Brownstown Borough, have filed a petition for allowance to intervene as plaintiffs. At the argument on the preliminary objections when the petition was filed, district objected to the allowance of the prayer of the petition. No hearing has been held to establish the facts upon which it is based.

While it is conceded by district that taxpayers and residents of Brownstown Borough may have a cause of action, and with this we agree, we must conclude, even if intervention is allowed, that this court is without jurisdiction to adjudicate the issues. Therefore, in the interests of economy of time, and so as not to prejudice those who seek to intervene, their petition will be dismissed.

Let us assume, arguendo, the intervention is allowed.

If the averments of the complaint are sustained and plaintiff was induced by fraud and deceit to approve the advance establishment of district, which resulted in a higher tax rate, and to assume the indebtedness of Dale Borough School District and the rental obligations of Middle Taylor Township School District, then the aggrieved taxpayers have a pecuniary interest. In our view, this grievance cannot be remedied at law, but requires injunctive relief in equity. However, the futility of intervention is apparent when we review the requested relief.

Plaintiffs (again assuming the taxpayers have been allowed to intervene) request this court to order Dale Borough School District and Middle Taylor Township School District (and we must assume also they are in legal existence for the purpose of this discussion) to levy a tax which would be in addition to the levy made by the district interim operating committee in anticipation of the establishment on and after July 1, 1965. This latter levy was made under the Act of March 10, 1949, P. L. 30, art. VI, sec. 603, as amended, 24 PS §6-603, which provides, inter alia:

"There shall be but one levy of school taxes made in each school district in each year, which shall be assessed, levied, and collected for all the purposes provided in this act, and shall be uniform throughout the territorial limit of each School District: . . ."

While an additional levy has been held valid under unusual circumstances to meet emergencies (Dunkard Township School Tax Case, 359 Pa. 605), section 603 explicitly provides that only one levy may be made in each fiscal year. In our opinion, this court lacks the power to order the aforementioned districts to levy an additional tax on their residents even if they are existing political subdivisions.

The request to order district to revise its budget by deleting the Middle Taylor Township rental and the

Dale Borough School District's current operating indebtedness must also be denied. Section 687 (a) of the Act of March 10, 1949, 24 PS §6-687, sets forth the budgetary procedure to be followed by school districts. The budget adopted by the interim operating committee is presumed to have complied with that procedure. It is now established as the operating budget of district, and may not be changed except in event of emergencies, or to appropriate funds for rentals under lease from the State Public School Building Authority or any municipality which is entered into subsequent to adoption of the budget: section 687 (c) of the Act of March 10, 1949. We must conclude, therefore that this court lacks the power to require district to reform its operating budget after adoption and contrary to the Act of 1949.

Even if we could decree the relief requested, it would seriously prejudice the rights of creditors who are not parties herein and whose debts have, by operation of law, become obligations of district under section 298-(a) of the Act of 1963.

We must conclude, therefore, that this court, even allowing the intervention, can offer no relief while the district is operating as the administrative unit of the area. Thus, if the taxpayers who seek to intervene have any remedy, it is by way of recall or cancellation of the certificate of advance establishment issued by the department.

The General Assembly is charged with the responsibility of providing a thorough and efficient system of public schools. The Act of 1963 sets up a comprehensive system whereby this mandate may be implemented. This system requires the department, acting through its State Board of Education, to evaluate education programs in the public schools of the Commonwealth and formulate standards for the establishment of administrative units. Its Council of Basic Education

must review and approve or disapprove all plans submitted by the county boards of school directors. Thus, the very existence of a reorganized district is directly attributable to the General Assembly's prime responsibility in this field, and its fulfillment of that responsibility through the department, an agency of the Commonwealth. It would seem, therefore, the Commonwealth is vitally interested in any matter arising as a result of its action in planning and approving the reorganization of administrative units, and must have a voice in any litigation questioning the details of that reorganization.

The department, therefore, is an indispensable party.

We agree with plaintiff's argument, adopted by the taxpayers who seek to intervene, that courts of common pleas sitting in equity have in the past exercised jurisdiction over matters relating to jointures, consolidations and merged districts. Jurisdiction in such matters is well established. The Act of 1963 has not changed the law in this respect, and no doubt this court will determine many matters arising in the future administration of reorganized districts.

We must distinguish, however, the issues here from those which have in the past been decided by a court of equity. The matters here complained of intimately concern the department, since the legislature designated it as the reviewing and approving agency in establishing the district. The prayers for relief question and contest the decision of the department. Thus, it is of no avail that plaintiff or the taxpayers who seek to intervene concede the lack of jurisdiction in this court over the department as a defendant, and would agree to judgment in its favor on the question of venue.

If there had been no advance establishment, and similar grievances were offered to the establishment of

the district, effective July 1, 1966, they would have been initially heard by the State Board of Education (section 295), with right of appeal to the Dauphin County court from any order of that agency: Administrative Agency Law of June 4, 1945, P. L. 1388, sec. 41, 71 PS §1710.41. While no such appeal was taken, since the grievances now urged were not known prior to approval of the plan, this appellate procedure indicates the department is a necessary party in any litigation involving grievances arising incident to reorganization of administrative units under the Act of 1963.

We have discussed the merits of the case in order to show the futility of allowing the taxpayers and residents of Brownstown Borough to intervene in the action before this court, and to save them a fruitless contest, which would be time consuming and may ultimately prejudice their claims.

In conclusion, it seems relevant to discuss briefly the motives and objectives which have influenced the General Assembly in so drastically altering the educational system in the Commonwealth.

The Reorganization Act of 1963 has as its object the "strengthening of a district's education program" (section 290.1) and promulgation of certain standards for the establishment of administrative units which consider, in addition to physical factors, "the capability of providing a comprehensive program of education": section 291. This is in implementation of the General Assembly's responsibility, shared with the local and county boards of school directors and administrators, "of educating and training each child within his capacity to the extent demanded by the immediate requirements of growth and strengthening of this Commonwealth and nation": Section 290.

In order to bring about the desired results, it is inevitable that certain districts which have heretofore

provided a system of education with high standards will be joined with other districts which, because of financial distress or other factors, may not have afforded the same educational facilities and standards. Inequities are bound to result. Taxpayers, who heretofore have regarded their school system as a vital trust, and have by heavier tax rates and personal effort, attained high standards within a district, will, as a result of some reorganizations, find they must assume the burdens, financial and otherwise, of a district which has not fared so well for any number of reasons. This is indeed unfortunate, and has resulted in criticism of reorganization plans in many areas.

However, the General Assembly, in order to fulfill the constitutional mandate, after thorough study and evaluation and experience with voluntary jointures, mergers and consolidations, has decided the best method of equalizing educational facilities and opportunities can be accomplished only by mandatory reorganizations. When viewed in future perspective, the heavier burdens which some districts must assume should be ameliorated by many advantages of the larger administrative unit. It seems inevitable, with the same ". . . dedicated responsibility exercised over the last century by the citizenry through their local boards of school directors . . ." (section 290), the new system will accomplish the objectives of the General Assembly.

When applied to the case at bar, it is apparent the district would have been established by mandate on July 1, 1966, and the conditions of which plaintiff and those who seek to intervene complain may have worsened by that time. While this does not assuage the chagrin which the residents of Brownstown Borough may feel as the result of the manner in which they allege the advance establishment was approved, it nevertheless must be recognized that cancellation or

recall of the certificate of advance establishment may conceivably result in detriment to the educational system of the area. While we cannot say there is no wrong without a remedy, in this case the remedy may produce more hardship than the wrong.

For the foregoing reasons, we enter the following

### DECREE

Now, September 21, 1965, after argument and upon consideration of briefs, it is hereby ordered and decreed as follows:

1. The petition of the taxpayers, property owners and residents of Brownstown Borough, to intervene as plaintiffs in this action, is dismissed.

2. The preliminary objections of the Department of Public Instruction and the Board of School Directors of Ferndale Area School District are sustained.

3. The complaint of the School District of the Borough of Brownstown is dismissed.