## Kelley et al. *v.* Kalodner et al.

Argued September 30, 1935.   Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

182

*John P. Connelly,* with him *F. Gilman Spencer,* for Joseph J. Kelley, plaintiff.

*Thomas Raeburn White,* for Clarence L. Harper, intervener.

*Warwick Potter Scott,* with him *Frederic L. Ballard,* of *Ballard, Spahr, Andrews & Ingersoll* and *David A. Reed,* for John H. W. Ingersoll, intervening plaintiff.

*Charles J. Margiotti,* Attorney General, with him *John Y. Scott,* Deputy Attorney General, for defendants.

*Oscar G. Bender,* for Pennsylvania Real Estate Association, amicus curiæ.

OPINION BY MR. CHIEF JUSTICE FRAZER, November 25, 1935:

Joseph J. Kelley, a taxpayer of the City of Philadelphia, brought this bill in equity, over which we have assumed original jurisdiction, to obtain an injunction restraining The Telegraph Printing Company, a corporation, and appropriate officers of the Commonwealth of Pennsylvania from carrying into effect the provisions of an act of assembly approved July 12, 1935, P. L. 970, imposing a graduated income tax for school purposes on residents of Pennsylvania, including fiduciaries, and on income of nonresidents derived from property or business in Pennsylvania. The relief sought by plaintiff is predicated upon the theory that the act in question is, in several respects, in violation of the Constitution of the Commonwealth and for that reason void and of no effect. In behalf of defendants the attorney general appeared before us and vigorously urged the validity of this legis-

lation. In our consideration of the question, we have also had the benefit of briefs and arguments of other learned counsel, some appearing for the intervening plaintiffs, Harper and Ingersoll, and others as amici curiæ. We are highly appreciative of the assistance rendered us by all these gentlemen in the determination of the difficult and important issue here involved.

The act referred to above, the constitutionality of which is attacked by plaintiff's bill, is too lengthy to be set forth verbatim in this opinion. It will suffice to say that the statute provides a comprehensive system for the levy and collection of an annual tax upon the entire net income of residents of Pennsylvania and upon the net income received by nonresidents from property owned or from any business or occupation carried on within this Commonwealth. Gross income is defined in the act as including the "gains, profits and income derived from salaries, wages or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of, or interest in, such property, also from interest, rent, dividends, securities, or the transaction of any business, carried on for gain or profit, and all other income derived from any source whatever, including income derived through estates or trusts by the beneficiaries thereof, whether as distributed or as distributable shares." Numerous exemptions are permitted by the act for the computation of "gross income" as well as deductions for the determination of "net income." Taxpayers are allowed a deduction for living expenses in the amount of $1,000 in the case of a single person, and $1,500 for the head of a family or a married person. In addition a deduction of $400 is authorized for each dependent under eighteen years of age. The tax is imposed at the rate of two per cent of the amount of incomes not exceeding $5,000; two and one-half per cent of the amount over $5,000 but not ex-

ceeding $10,000; three per cent of the amount over $10,000 but not in excess of $25,000. Higher rates are applied on incomes within higher brackets, with a provision taxing all income over $100,000 at the rate of eight per cent.

The principal objection to the bill is that it violates sections 1 and 2 of article IX of the Constitution of Pennsylvania which reads as follows: "Section 1. All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity, and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors and marines."

"Section 2. All laws exempting property from taxation, other than the property above enumerated, shall be void."

It is not disputed that the section quoted above applies to property taxes. The position of the defendants is that this section of the Constitution applies *only* to property taxes, and that a progressive income tax is not a property but an excise tax, and therefore that the tax levied by the act under consideration does not need to conform to the constitutional provision.

It accordingly appears that our inquiry should first be directed toward ascertaining the nature of a graduated income tax. There are no cases determinative of the question in this State, but counsel have referred us to numerous decisions in other jurisdictions in which the point has arisen. An examination of these authorities shows a clear-cut division of opinion, one line of cases holding that an income tax is in the nature of an excise,

the other that such a tax is a property levy. Typical of the former line of cases are Diefendorf v. Gallet, 51 Idaho 619; Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Missouri 339; Simms v. Aherns, 167 Ark. 557, and Miles v. Department of Treasury, 193 N. E. 855. In the last named case, decided January 29, 1935, the Supreme Court of Indiana concluded that a graded income tax "is an excise, levied upon those domiciled in the State, upon the basis of the privilege of domicile, and that the burden may reasonably be measured by the amount of income."

On the other hand, there is a considerable amount of judicial opinion holding a graduated income tax to be a property tax and subject to the constitutional requirements applicable to taxes of that character. Among the cases so holding are Opinion of the Justices, 220 Mass. 613, reaffirmed in 266 Mass. 583; State v. Pinder, 7 Boyce (Del.) 416; Bachrach v. Nelson, 349 Ill. 579, and Culliton v. Chase, 174 Wash. 363. Plaintiffs also maintain that in Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429 (on rehearing, 158 U. S. 601) the Supreme Court of the United States ruled that an income tax was a property tax. In our opinion, what that case actually decided was that a federal tax on the income from real estate was a direct tax on the land itself and hence subject to the provision of the federal Constitution requiring direct taxes to be apportioned among the states. The court also held that in so far as the tax under consideration was a tax upon the income from municipal bonds, it was a tax upon the power of the states and their instrumentalities to borrow money and consequently repugnant to the Constitution. At all events, whatever light was thrown by the opinion of the court in the Pollock case on the question of whether or not an income tax is a property tax is much obscured by the subsequent decision of the Supreme Court in Brushaber v. Union Pacific R. R. Co., 240 U. S. 1. In the latter

case, which involved the constitutionality of the Federal Income Tax Act of 1913, there is dictum of Mr. Chief Justice WHITE to the effect that taxation on income is in its nature an excise. This view had earlier been expressed by the learned justice in his dissenting opinion in the Pollock case. It must be remembered, however, that none of the opinions of the Federal Supreme Court, either at the first or second hearing of the Pollock case, or in connection with the Brushaber case, conclusively determines the question which is before us now, namely, whether an income tax is a property tax within the meaning of the Pennsylvania Constitution. This necessarily follows from the fact that the inquiry into the nature and validity of the Federal Income Tax was directed to a consideration of the exact meaning of the phrase "direct taxes," which in turn involved an understanding of the meaning of that phrase contemplated by the framers of the Constitution and the interpretation given the term by a long line of cases, of which Hylton v. U. S., 3 Dall. 171, was the first and foremost. The net result is that the United States Supreme Court cases relied upon by counsel in the present case are of little or no value as precedents for our consideration.

For our purposes a discussion of the nature of an income tax is hedged in by no artificial restrictions arising from a peculiar or narrow interpretation of the applicable portions of our Constitution in former cases. We are at liberty to determine the question along normal, natural lines. In so doing we are inevitably impelled to the conclusion that an income tax is a property tax. This result seems particularly clear in so far as a tax upon the income from real and personal property is concerned. The act in question places a tax upon all income derived from any source whatever, subject, of course, to stated exemptions and deductions. The income from real estate, for example, is not exempt. A tax upon the income from such property necessarily diminishes its value in the hands of the owner and to

that extent is a tax upon the land itself. In like manner a tax upon the income from bonds and stocks is a tax upon the securities themselves. This thought was well stated by the Supreme Judicial Court of Massachusetts, as follows: "A tax upon income from money on deposit or at interest, from bonds, notes or other debts due, and as dividends from stocks, coupled with exemption from all other taxation of the principal from which such income flows, is in substance and effect a tax upon the property from which it is derived. A tax upon the income of property is in reality a tax upon the property itself. Income derived from property is also property. Property by income produces its kind, that is, it produces property and not something different. It does not matter what name is employed. The character of the tax cannot be changed by calling it an excise and not a property tax. In its essence a tax upon income derived from property is a tax upon the property": Opinion of the Justices, 220 Mass. 613, 623, 624. And see Culliton v. Chase, 174 Wash. 363, where it is said: "The overwhelming weight of judicial authority is that income is property, and the tax upon income is a property tax." This language is almost identical with that used in the opinion of the court in Bachrach v. Nelson, 349 Ill. 579, 591. To the same effect is National Life Insurance Co. v. United States, 277 U. S. 508, where Mr. Justice McReynolds said: "It is settled doctrine that directly to tax the income from securities amounts to taxation of the securities themselves." See also Redfield v. Fisher, 130 Or. 180, and Hobart Estate Co. v. State Board of Equalization, 1 Cal. App. (2d) 328.

Our conclusion, accordingly, is that, in so far as the Act of Assembly of July 13, 1935, attempts to levy a tax upon the income from real estate or from stocks, bonds and similar securities in the hands of the owner thereof, it is a property tax and subject to the constitutional requirement of uniformity. We pass no opinion upon the question of whether a tax upon the income

from trades, occupations or professions is a tax on property, although respectable judicial opinion has indicated that it is not. See Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 637. The legislation here under consideration purports to levy a tax upon income from whatever source obtained. Even if it be conceded that a tax upon the income derived from occupations or professions is an excise tax, it does not follow that the tax is to that extent valid, for, although section 802 declares as a legislative intent that the act would have been adopted even though a particular "section, sentence, clause or part" is held to be unconstitutional, it is a well-known canon of statutory construction that if the different parts of an act "are so mutually connected with and dependent upon each other, as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them": Warren v. Charlestown, 2 Gray (Mass.) 84. The possible sources of taxable revenue are inextricably interwoven and combined in the act, and we are convinced that this bill would never have been passed by the legislature if its only effect was to impose a tax upon the income derived from occupations and professions. Consequently, if the act is bad in part it must be wholly rejected.

The question then arises, does the act fulfill the rule of uniformity prescribed by the Constitution. Plaintiffs contend it does not and for several reasons. The first is that the provision exempting from taxation those persons whose incomes fall below $1,000 or $1,500, depending upon whether they are single or married, shows upon its face a lack of uniformity. There can be no doubt that these exemptions were inserted for the purpose of putting the burden of the tax upon those most

able to bear it, but it results in taxing those whose incomes arise above a stated figure merely because the legislature believes their incomes are sufficiently great to be taxed. It is obvious that the application of the tax is not uniform. Although in the present case the exemption appears to be reasonable, the principle of inequality involved, if once established, might lead to grossly unfair results in the future.

Moreover, the tax is in violation of the uniformity clause in its application to the persons whose incomes fall within the various brackets designated in the act. We have previously ruled that a tax which is imposed at different rates upon the same kind of property, solely on the basis of the quantity involved, offends the uniformity clause. In Cope's Est., 191 Pa. 1, 22, we said: "A pretended classification that is based solely on the difference in quantity of precisely the same kind of property is necessarily unjust, arbitrary and illegal. For example, a division of personal property into three classes with the view of imposing a different tax rate on each,—class 1, consisting of personal property exceeding in value the sum of one hundred thousand dollars ($100,000), class 2, consisting of property exceeding in value twenty thousand dollars ($20,000) and not exceeding one hundred thousand dollars ($100,000), and class 3, consisting of personal property not exceeding in value twenty thousand dollars ($20,000)—would be so manifestly arbitrary and illegal that no one would attempt to justify it." The act before us clearly falls within this language, and it is unnecessary to elaborate the matter further to show that the proposed income tax plainly and palpably violates the rule of uniformity.

Moreover, even if we assume a graduated income tax is not a property tax, but instead an excise tax, as contended by defendants, it is by no means clear that it would not fall within the constitutional requirement as to uniformity. In Banger's Appeal, 109 Pa. 79, we de-

clared unconstitutional an ordinance of the City of Williamsport which purported to levy an occupation tax, the principal ground of our decision being that the tax was not uniform in its application but varied according to the income derived from their occupations by the persons subject to the tax. Although in that case the tax was in effect upon the income from occupations, on its face it purported to be an excise tax. It was nevertheless held to be subject to the rule of uniformity prescribed by the Constitution. In Cope's Estate, supra, in which we considered the validity of an inheritance tax, and declared it unconstitutional for want of uniformity, Mr. Chief Justice STERRETT said (page 21) : "The language of section 1 [Article 9 of the Constitution], as to what the rule of uniformity shall embrace, is as broad and comprehensive as it could possibly have been made. The words, 'all taxes,' must necessarily be construed to include property tax, inheritance tax, succession tax and all other kinds of tax, the subjects of which are susceptible of just and proper classification." Although the tax in that case was construed as a property tax and not an excise, nevertheless the language of the then Chief Justice quoted above is so all-embracing in its character as to require serious consideration. It is suggested by defendants that in Knisely v. Cotterel, 196 Pa. 614, the court, relying upon Allentown v. Gross, 132 Pa. 319, and Williamsport v. Wenner, 172 Pa. 173 (in both of which we approved mercantile license taxes measured by gross sales), indicated that excise taxes are not subject to the rule of uniformity. It even appears that the lower court in Knowles' Estate, 295 Pa. 571, expressly adopted that theory; but on appeal to this court, after full discussion of the matter we declined to approve the proposition as a rule of law and stated merely (page 589) that "perhaps the distinction made by the court below . . . is a valid and controlling one." It is therefore evident that there has been

no conclusive determination of the question whether excise taxes are in this state subject to the rule of uniformity. On behalf of defendants the argument is made that excise taxes by their nature are not adapted to the rule of uniformity, since "it is highly impracticable, if not impossible, to classify the subjects upon which a tax is levied according to value." Be that as it may, the objection remains that the Constitution declares "*All taxes* shall be uniform upon the same class of subjects" and we are not at liberty to disregard this plain mandate of the law upon the ground of inconvenience. Our conclusion is, then, that our previous cases do not justify defendants' assertion that excise taxes need not be uniform in application, and that the tax in question, even though considered an excise, may nevertheless be subject to the constitutional requirement. It is unnecessary to settle the question at this time, however. We find this tax to be, in part at least, a property tax which plainly and without question violates the constitutional rule regarding uniformity, and for that reason must be declared void. Even though the operation of the act might possibly be valid in some instances, the good and the bad are so inseparably interwoven that we are obliged to reject the levy in its entirety.

Little more need be added to the foregoing. In view of our decision that the act is invalid because in conflict with article IX, section 1 of the Constitution, it is unnecessary to consider the objection that it is also bad because it contravenes section 7 of article III, which forbids the General Assembly from passing any local or special law "regulating the affairs of counties, cities, townships, wards, boroughs or school districts," or "regulating the management of public schools, the building or repairing of schoolhouses, and the raising of money for such purposes." This question is apparently raised because the proceeds of the tax are intended for school purposes, and by section 701 of the act are directed to

be paid by the department of revenue into the state school fund of the state treasury. Inasmuch as the act applies to all school districts and could not for that reason be local or special legislation, we find no merit in the objection.

On the other hand, we are urged by defendants to sustain this tax because of the excessive share of taxation now borne by real estate in this Commonwealth, and because the necessity of the times requires that the tax burden be more equitably distributed. Obviously, we need not dwell on this proposition. The Constitution is the fundamental law of the Commonwealth and cannot be flagrantly violated even for the reasons just stated. If such were not the case, there would be no stability in our law, and under the guise of necessity every mandate of the Constitution would in time be infringed. We will not lend our assistance to such a scheme.

Moreover, the people of Pennsylvania have clearly shown their antagonism to the proposed theory of taxation. In 1913, and again in 1928, the electorate rejected amendments to the Constitution which would have made legally possible the imposition of taxes with progressive rates. If, by appropriate methods, the Constitution is amended to permit the imposition of a progressive income tax, we will, of course, be bound thereby, but until that time we have no alternative other than to declare the law as it exists at present.

In view of what has been said we assume it is unnecessary to make a formal order of restraint. If, at any time, plaintiffs, or any member of the class on whose behalf suit was brought, find a formal order necessary, application may be made. The bill will accordingly be retained, costs to be paid by defendants.