## Dunkard Township School Tax Case.

606

Argued May 27, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*James W. Hawkins*, with him *Lloyd E. Pollock, Paul V. Mahoney, Albert A. Sayers* and *Sayers & Hawkins*, for appellants.

*W. Robert Thompson,* with him *John E. Baily* and *Montgomery, Thompson & Baily,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, July 6, 1948:

This case arises from a legislative problem which, in the summer or early fall of 1947, confronted not only the particular school district here involved but probably other school districts as well.

On August 1 of that year the School District of Dunkard Township, Greene County, a school district of the fourth class, adopted its annual budget and levied a tax of 16 mills on the assessed valuation of real estate in the township and a per capita tax of $2 per person. In order to provide the revenue required for the school year there was included in the estimated receipts a provision for temporary loans in an amount approximating $36,000.

Meanwhile, but with its provisions unknown to the Board of School Directors, the Act of July 5, 1947, P. L. 1266, had been passed, amending the School Code by providing for a new schedule of salaries and increments for professional employes of school districts and making it mandatory upon the school districts to pay such salaries and increments beginning with the then current school year, which, in second, third and fourth class districts, would be from July 1947 to July 1948. As it was recognized that under the provisions of the School Code the budgets might have been already adopted and the taxes levied for that year by the Boards of School Directors, it was provided that "In order to pay the additional amounts of salaries provided for by this act, the board of school directors . . . of any school district may for the fiscal year . . . 1947-1948 . . . revise its budget by increasing its appropriation or appropriations for salaries of professional employes of the school district for such fiscal year, the funds therefor may be provided from unexpended balances in existing appropriations,

from unappropriated revenue, if any, or from temporary loans."

It was not until sometime in September that the Board of Directors of the Dunkard Township School District became aware of the amount of increased revenue they would be obliged to raise for the payment of the prescribed minimum salaries and increments under this new legislation. In order to meet the situation the School District, on October 14, 1947, acting in pursuance of the authority granted by the Act of June 25, 1947, P. L. 1145, passed a resolution levying and imposing a tax upon the "privilege, transaction or occupation of mining, processing and marketing of bituminous coal mined by strip mining methods at the time of its severance from the realty within the boundaries of Dunkard Township, Greene County, Pennsylvania," at the rate of ten cents per ton of bituminous coal "so mined, processed and marketed from and within the township." This resolution was duly advertised and became effective 30 days after the date of its adoption.

Certain taxpayers of the township appealed to the Court of Quarter Sessions of the county praying that the resolution of the Board be declared invalid and that the school district be enjoined from collecting the taxes thereby imposed. The court dismissed the appeal and the taxpayers have now taken a further appeal to this Court.

Appellants voice two objections to the validity of the resolution: (1) that it violates section 502 of the School Code (Act of May 18, 1911, P. L. 309) which provides that a school district may not make more than one levy of school taxes in each year, and (2) that since the coal produced by strip mining had already been taxed, either directly or indirectly, as real estate in place, to tax it again after its severance from the surface would constitute double taxation.

While, as previously stated, the Act of July 5, 1947, P. L. 1266, expressly provided for revision of budgets

already adopted by Boards of School Directors for the fiscal year 1947-1948, appellants contend that the additional funds needed could, according to the language of the Act, be secured only from unexpended balances in existing appropriations, from unappropriated revenue, if any, or from temporary loans. It will be observed, however, that those methods of securing the additional revenue are made permissive, not mandatory or exclusive; in fact the legislature must have realized that it might prove impossible for some school districts, because of lack of unappropriated revenue or because of practical or legal inability to increase the amount of temporary loans, to obtain the funds from such sources. Of course the legislature was also aware that the Act of June 25, 1947, P. L. 1145, had just been passed to give authority to such school districts, for general revenue purposes, to levy, assess and collect taxes on persons, transactions, occupations, privileges, subjects and personal property,—the only limitation being that such taxes should not be imposed on anything which then was or thereafter might become subject to a state tax,—and it was not necessary to repeat or call attention in the Act of July 5, 1947, P. L. 1266, to that grant of authority. In view of the emergency situation presented to the Board of School Directors arising from the duty imposed upon them of raising the funds necessary to pay the prescribed new salaries, we see no reason why the School District could not employ the authority thus given to impose the tax here in question, it being borne in mind, however, that the statutory permission to revise the annual budget and provide for additional revenue was expressly limited to the one fiscal year and the one purpose stated in the act.

There is no merit in the contention that the imposition of the tax is invalid because the coal had already been taxed in place. Not only is double taxation constitutionally permissible (see *Puntureri v. School District of Pittsburgh*, 359 Pa. 596, 60 A. 2d 42), but here

there is no double taxation. The tax on the coal in place is a property tax; the tax imposed by the resolution under consideration is an excise tax on the privilege or occupation of strip mining coal. Nor is there involved any violation of the constitutional requirement of uniformity; a classification for tax purposes between anthracite and bituminous coal has long since been held unobjectionable (*Heisler v. Thomas Collier Co.*, 274 Pa. 448, 118 A. 394), the difference between the strip mining of coal and the similar mining or quarrying of other substances as justifying tax classification has also been judicially approved (*DuFour v. Maize*, 358 Pa. 309, 319, 56 A. 2d 675, 680), and obviously there are proper grounds also for tax classification between operators engaged in deep mining and those engaged in strip mining of coal (see *DuFour v. Maize*, supra, p. 313, A. pp. 677, 678).

The order of the court below is affirmed and the appeal dismissed at cost of appellants.