Fischer *v.* Pittsburgh, Appellant.

Argued November 8, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*David Stahl,* Assistant City Solicitor, with him, *J. Frank McKenna, Jr.,* City Solicitor, for appellants.

*Jerome C. Bachrach,* with him *Abe R. Cohen* and *Crone & Cohen,* for appellees.

OPINION BY WOODSIDE, J., March 24, 1955:

This is an appeal by the City of Pittsburgh from an order of the Common Pleas Court of Allegheny County sustaining a complaint in equity to prohibit the city from collecting a one percent tax on a partnership's net profits derived solely from the business of manufacturing.

The action was submitted to the lower court as a "case stated" so there is no dispute as to the facts.

The City of Pittsburgh by an ordinance approved January 27, 1954 imposed a one percent (1%) earned income tax on salaries, wages, commissions and other compensation and on net profits earned from businesses, professions and other activities conducted in the city. Under this ordinance and the regulations issued pursuant thereto, each partnership carrying on a business wholly within the City of Pittsburgh is required to pay the tax for each partner's share of the total net profits therefrom, whether or not such profits are distributed to him, unless such partner is exempt from the tax by the terms of the ordinance. The ap-

pellees admit that the ordinance was duly enacted, and its regulations issued in a regular manner.

Fischer Bed Spring Company, the plaintiff partnership, is a manufacturer of bed springs and allied products, and its entire business net profits are derived from manufacturing carried on within the City of Pittsburgh. The individual plaintiffs are all the members of the partnership, and all reside in Pittsburgh. The company regularly carries a substantial inventory of manufactured articles and articles in process of manufacture.

The question to be decided is whether the plaintiffs are subject to the earned income tax levied by the city, or whether defendant, City of Pittsburgh, is prohibited from imposing the tax on plaintiffs, who are engaged in manufacturing, by reason of the provisions contained in Section 1A(4) of the Act of June 25, 1947, P. L. 1145, as amended by the Act of May 9, 1949, P. L. 898, 53 PS §2015.1.

In 1947 the legislature enacted the above "Act No. 481" which became popularly known as the "Tax Anything Act." It is under the authority of this act that the City of Pittsburgh claims the right to promulgate and enforce the above ordinance. In 1949 the legislature amended the act restricting the powers of municipalities to impose this tax.

The relevant part of this act, including the amendment, which is before us for interpretation provides as follows:

"A. The duly constituted authorities of . . . cities of the second class . . . may, in their discretion, by ordinance . . . for general revenue purposes, levy assess and collect . . . such taxes on persons, transactions, occupations, privileges, subjects and personal property within the limits of such . . . [city], as they shall determine, except that such . . . [city] shall not

have authority by virtue of this act (1) to levy, assess and collect . . . any tax on a privilege, transaction, subject, occupation or personal property which is now or does hereafter become subject to a State tax or license fee; . . . or (4) to levy, assess and collect a tax on goods and articles manufactured in such political subdivision . . . or on any privilege, act or transaction related to the business of manufacturing, . . ."

Clause (4), supra, is the part added by the amendment of 1949.

At the outset it becomes important to determine whether the act should be strictly construed against the city or strictly construed against the taxpayer.

Municipal corporations can levy no taxes upon inhabitants or their property unless the power to do so is plainly and unmistakably conferred by the legislature. The grant of such right must be strictly construed and not extended by implication. *Breitinger v. Philadelphia,* 363 Pa. 512, 514, 70 A. 2d 640 (1950); *Hillman Coal & Coke Co. v. Jenner Twp.,* 300 Pa. 108, 112, 150 A. 293 (1930).

In *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 171, 87 A. 2d 480 (1952) the court said: "Neither municipalities nor school districts are sovereigns; they have no original or fundamental power of legislation or of taxation. They have the right and power to enact only those legislative and tax ordinances or resolutions which are authorized by an Act of the legislature; and if such ordinance or resolution is unauthorized or conflicts with the enabling statute or with some of its provisions it is in that respect or to that extent void: (citing). Moreover the grant of the right or power to levy taxes must be strictly construed; tax statutes should receive a strict construction and in cases of reasonable doubt, the construction should be against the government: (citing)."

It has long been the rule that tax statutes should be strictly construed; and in cases of doubt the construction should be against the government. *Boyd v. Hood*, 57 Pa. 98 (1868); *Scranton v. O'Malley Manufacturing Co.*, 341 Pa. 200, 204, 19 A. 2d 269 (1941); *Sauer Appeal*, 167 Pa. Superior Ct. 33, 35, 36, 74 A. 2d 700 (1950).

When the question is whether the taxpayer or his property belong to the class upon which the tax is imposed, the act must be strictly construed against the taxing authority, and no tax can be collected in the absence of a provision clearly imposing it. *Thaw Estate*, 163 Pa. Superior Ct. 484, 488, 63 A. 2d 417 (1949); *Dorrance's Estate*, 333 Pa. 162, 171, 3 A. 2d 682 (1939).

But where the taxpayer or his property is within the general language of the statute imposing the tax, all exempting provisions are to be strictly construed against the taxpayer claiming the exemption. *Thaw Estate*, supra; *Com. v. McCarthy*, 332 Pa. 465, 468, 3 A. 2d 267 (1938).

The able city solicitor in his comprehensive brief argues that section IA(4) of the above act is a provision exempting from taxation and as such must be strictly construed under the rule set forth in the foregoing paragraph.

He cites the following cases in support of this rule: *Com. v. Union Collieries Company*, 372 Pa. 452, 93 A. 2d 460 (1953); *Com. v. Stegmaier Brewing Co.*, 309 Pa. 52, 163 A. 175 (1932); and *Com. v. Sunbeam Water Co.*, 284 Pa. 180, 130 A. 405 (1925), all of which interpreted exemption provisions contained within the statutes which imposed the capital stock tax, and *Callery's Appeal*, 272 Pa. 255, 116 A. 222 (1922), which interpreted the Act of June 17, 1913, P. L. 507, imposing a personal property tax to be assessed and collected

by the counties. All of these cases, including the *Thaw* and *McCarthy* cases cited by us, were interpreting statutes which *imposed* the taxes. The Act of 1947, as amended, now before us, imposes no tax; it merely *authorizes* the city to impose certain taxes, and, as we have said above, such authorizations must be strictly construed.

It is true that certain statutes which exempt property from local taxation have been strictly construed against the taxpayer. *Academy of Fine Arts v. Philadelphia County*, 22 Pa. 496 (1854); *Clearfield Bituminous Coal Corporation v. Thomas*, 336 Pa. 572, 9 A. 2d 727. Neither of these cases, however, was interpreting either a statute which authorized the imposition of the tax or a statute which amended an act authorizing the imposition of a tax. Both were separate statutes, directed solely at creating an exemption. In the instant case we have before us the interpretation of the very sentence of the statute which authorizes the imposition of taxes.

The question here boils down to this: where a statute *authorizing* the imposition of a tax contains a clause limiting the authority of a municipality to impose the tax conferred by the act, is such clause to be strictly construed against the taxpayer under the rule that exemptions from taxation are strictly construed, or is it to be strictly construed against the municipality under the rule that acts authorizing municipalities to impose taxes must be strictly construed?

We think the Supreme Court has answered that question for us.

By the Act of August 5, 1932, P. L. 45, 53 PS §4613 the council of the City of Philadelphia in a provision almost identical to the provision before us was authorized "to levy, assess and collect . . . taxes on persons, transactions, occupations, privileges, sub-

jects and personal property, within the limits of such city . . . *except* that such council shall not have authority . . . [to impose a tax] . . . on a privilege, transaction, subject or occupation, or on personal property which is now or may hereafter become subject to a State tax or license fee." (emphasis supplied) Under authority of this act the Philadelphia City Council imposed an income tax. In *Murray v. Philadelphia,* 364 Pa. 157, 71 A. 2d 280 (1950) the Supreme Court was called upon to decide whether a number of specific items of income were taxable under the ordinance or whether the city council had no authority to impose the tax upon them because they were "excepted" on the ground they were then subject to a state tax. The Supreme Court there applied the rule of strict construction against the taxing authority saying, on Page 163, ". . . ' "it is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon inhabitants, or their property, unless the power be plainly and unmistakably conferred": (citing). And the grant of such right is to be strictly construed, and not extended by implication: (citing).' "

That statute, like the one before us, authorized a city to impose certain taxes "except"—and then followed the first exception practically identical to the one before us. If the first exception is to be strictly construed certainly the fourth must also be strictly construed.

We are therefore bound to apply the rule of strict construction against the city in the matter before us, and in case of doubt the construction must be resolved against the city.

Judge SAMUEL A. WEISS, writing the opinion for the lower court, held that the tax on the income or profits from a property is a tax on the property itself.

There is considerable authority for holding that an income tax in Pennsylvania is a property tax especially if any part of the income subject to the tax is realized from property, real or personal. *Kelley v. Kalodner*, 320 Pa. 180, 181 A. 598 (1935); *Blauner's, Inc. v. Philadelphia*, 330 Pa. 342, 198 A. 889 (1938); *Philadelphia v. Samuels*, 338 Pa. 321, 12 A. 2d 79 (1940); *Federal Drug Company v. Pittsburgh*, 358 Pa. 454, 456, 57 A. 2d 849 (1948); *National Biscuit Co. v. Philadelphia*, 374 Pa. 604, 98 A. 2d 182 (1953); *Murray v. Philadelphia*, supra. But it has been recognized by the Supreme Court that the decisions of this Commonwealth are not harmonious as to whether an income tax is an excise tax or a property tax. *Roy Stone Transfer Corporation v. Messner*, 377 Pa. 234, 242, 103 A. 2d 700 (1954).

If the tax imposed by the city is a tax upon the income from the "substantial inventory of manufactured articles and articles in process of manufacture"[1] it is, at least in part, a property tax on the "goods and articles manufactured" and is consequently to this extent a tax not authorized by the act because it is a tax on "goods and articles manufactured".

The city argues that such an interpretation would result in part of the income of the business being taxable and part not, under circumstances which would lead to absurd results and impossible administrative problems. If such is the case the Supreme Court answers this in its opinion in *Kelley v. Kalodner, supra,* by saying all of the tax must then fall; that is, in this case, all the tax imposed upon manufacturers.

The taxpayers argue that if the tax which the city is attempting to collect from them is not a tax on the "goods and articles manufactured" by them, it is a tax on a "privilege, act or transaction related to the

---

[1] Quoting from the "case stated".

business of manufacturing," and in either event the city has no authority to impose it upon them.

It is to be noted that no specific reference is made to a tax on the "income" from manufacturing in the above limiting provision. The appellant argues that since elsewhere in the act reference is made to the taxing of "income", as in Sections 1A(5), 1E(c) and 5, it is evident that the legislature knew how to denominate an earned income tax and its failure to do so in the clause before us indicates it had no intention of having the limitation applied to an income tax.

There might be some validity to this argument had the legislature specifically authorized an income tax by name in that part of the section which authorized the imposition of the tax. But it did not. It authorized a tax on "persons, actions, occupations, privileges, subjects and personal property," without reference to income. The courts in *Butcher v. Philadelphia*, 333 Pa. 497, 6 A. 2d 298 (1938), and *Dole v. Philadelphia*, 337 Pa. 375, 11 A. 2d 163 (1940) decided language such as this authorized the imposition of an income tax.

No reference is made to a tax on sales, but sales have been held to be taxable if not related to manufacturing, but not taxable when a manufacturer sells the goods he manufactures. *Isaly Dairy Company v. Pittsburgh*, 379 Pa. 108, 108 A. 2d 728 (1954).

If the tax before us is considered a property tax on the plaintiff's inventory of manufactured goods or a privilege tax imposed for the privilege of doing business in the City of Pittsburgh the city has no authority to impose it upon the plaintiffs.

In a sense even a property tax and a poll is a "privilege tax" in that these taxes could be considered to have been imposed for the privilege of having property in, or residing within, the jurisdiction of the tax-

ing authority, but the term "privilege tax" has been given a more restricted meaning. Black's Law Dictionary (Third Edition) defines it as "a tax on the privilege of carrying on a business for which a license or franchise is required." There is authority for considering "privilege tax" and "excise tax" as synonymous terms. 84 C.J.S. Taxation §121.

The confusion of such terms as property tax, excise tax, privilege tax and franchise tax[2] has been

---

[2] The following cases are illustrative: In *Turco Paint & Varnish Company v. Kalodner*, 320 Pa. 421, 428, 184 A. 37 (1936), the first opinion considering the Corporate Net Income Tax, the court held that ". . . the present act imposes a tax on a privilege measured by net income." However in *Blauner's Inc. v. Philadelphia*, 330 Pa. 342, 345, 198 A. 889 (1938) the court to the contrary indicated: "We have held an income tax to be a property tax (Kelley v. Kalodner, 320 Pa. 180), and the corporate net income tax specifically to be such in Turco Paint & Varnish Co. v. Kalodner, 320 Pa. 421." p. 345.

In *Philadelphia v. Samuels*, 338 Pa. 321, 326, 12 A. 2d 79 (1940) it was held: "This court is committed to the view that the corporate net income tax is a property tax." (citing as authority therefore *Kelley v. Kalodner*, *Turco Paint & Varnish Co. v. Kalodner* and *Blauner's Inc. v. Philadelphia*).

The pendulum swung back again in *Commonwealth v. Warner Bros. Theatres, Inc.*, 345 Pa. 270, 271, 27 A. 2d 62 (1942) wherein the court analyzed the Corporate Net Income Tax in the following manner: "At the outset, it is to be observed that we are not considering an income tax, but an excise tax for the privilege of doing business in the Commonwealth, based upon net income as returned to and ascertained by the Federal Government." And in *Com. v. Bayuk Cigars, Inc.*, 345 Pa. 348, 351, 28 A. 2d 134 (1942) the corporate net income tax was again held to provide for ". . . a State excise tax payable for the privilege of doing business in this Commonwealth."

In *National Biscuit Co. v. Philadelphia*, 374 Pa. 604, 612, 98 A. 2d 182 (1953) the court summarized previous cases in the following language: ". . . the capital stock tax was again declared in Murray v. Philadelphia (citation) to be a tax on the property of

so extensive that Justice LINN was inspired to say in *Murray v. Philadelphia,* supra, page 169 about the Sterling Act, "In construing the Act, it is immaterial that state taxes have been referred to as excise or franchise taxes or by any other adjective; the reality controls."

Is the tax which the city is attempting to collect from the appellees a tax on a "privilege, act or transaction related to the business of manufacturing?" We think it is.

As Judge WEISS said in his opinion: ". . . The net profit of a business can only be obtained by the use of the property itself. It is the end product of a long series of transactions. Each step in the manufacturing process is essential and without one part the entire business must fall. This is especially true when net profits are considered. Without net profits, no

---

the corporation, and so likewise (citing) the corporate net income tax (citation), . . ."

Finally in *Roy Stone Transfer Corporation v. Messner,* 377 Pa. 234, 238, 239, 103 A. 2d 700 (1954) the court said: "The Corporate Net Income Tax Act of 1935 . . ., was declared to be a *property tax* in spite of the declaration in the Act that it was an excise tax; and as such, its Constitutionality was sustained: (citing)."

Despite these contradictory conclusions there does emerge a rather clear-cut factual, if not legal, distinction. It would appear that the courts in dealing directly with such issues as the validity of the taxing statute itself and its applicability to specific taxpayers have uniformly construed it as an excise tax on the privilege of doing business in the Commonwealth based upon net income. On the other hand a different conclusion is reached when the validity of a local taxing ordinance is questioned as being a levy on a transaction then the subject of the Corporate Net Income Tax and as such expressly prohibited by the provisions of a state enabling act. In such cases the courts have construed the local tax to be a privilege tax and the Corporate Net Income Tax to be a property tax thereby upholding the validity of the local tax as not being in conflict with the State tax.

business can long survive. Therefore, the net profits of a business must be considered as an integral part of the business and an essential part thereof.

"The City of Pittsburgh argues that net profits are only a passive result of a business and the manufacturing part of the business ends when the goods have been sold. This argument ignores the fact that without net profits there is no objective in having a manufacturing business. A business is a complete cycle, beginning with the original capital invested and ending with a profit to the investor. To shorten this cycle by omitting the net profits would be evading the realities of the business world."

And we might add that net profits of business are frequently used to expand business. To increase and expand businesses which employ people is a matter in which government is seriously interested, for employment has an important bearing on the welfare of the people.

The tax here is imposed upon the partner's share of the net profit whether distributed or not. The entire profit of the partnership might be allowed to remain in the business for the purpose of furthering the manufacturing business. Furthermore, the profit may not be in cash, but a large part, or conceivably all, might be in the inventory of manufactured articles.

As Chief Justice Stern said in *Isaly Dairy Co. v. Pittsburgh,* supra, p. 111, 112, ". . . the historical policy of the State has always been to encourage manufacturing by grants of exemption, either partial or total, from the imposition of various forms of taxation, and it would seem clear that by the provision in the Act of 1949 here under discussion the State did not wish to give authority to its political subdivisions to impose such taxes."

In *H. J. Heinz Company v. Pittsburgh,* 170 Pa. Superior Ct. 435, 440, 87 A. 2d 96 (1952) Judge HIRT said about the clause now before us, "It apparently is a part of the policy of the Legislature of Pennsylvania in fostering industry to reserve to itself the taxation of manufacturing in all of its phases. The 1949 amendment in prohibiting the taxation of '*any* privilege, act or transaction *related* to the business of manufacturing' is a manifestation of that policy."

It is argued that even though the corporate manufacturers pay state taxes not imposed on unincorporated manufacturers, it would be unfair to compel the unincorporated manufacturer to bear a burden of local taxation not imposed upon the incorporated manufacturers.

On the other hand it is argued that relieving individuals from the payment of this tax operates inequitably in two ways: first, the employes pay the tax on the wages they earn while the employer does not pay on the profits he earns; and secondly three persons owning all the stock of a manufacturing corporation pay a corporate net income tax on the earned income of the corporation and the city tax on any salary paid them by the corporation while the partners operating an unincorporated business pay neither.

Many business people will, it is claimed, avoid the tax if the plaintiffs herein are not liable.

But to justify the imposition of a tax without the plain warrant of a statute, it is not enough to show that the absence of a tax works an injustice in permitting many persons to escape. *Callery's Appeal,* supra.

If the legislature desires to encourage manufacturers to come into Pennsylvania and to employ Pennsylvanians, by protecting them against certain taxes, it has a right to do so, and has frequently done so

before. Furthermore, it may if it so desires impose upon corporations engaged in the manufacturing business tax burdens not imposed upon individuals engaged in that same type of business; that too it has frequently done before.

If it is the opinion of the legislature now in session, or of any future legislature, that the Act of 1949 should not limit the authority of a municipality to impose a tax on earned income or on net profits obtained by manufacturing, it can easily so provide.

Keeping in mind the history and purpose of exempting manufacturers from state taxes, and of the limiting by the state of the authority to impose taxes upon them by municipalities, and applying the rule that the act must be strictly construed against the municipality, we are of the opinion that the city has no authority under the aforesaid statute to impose a tax on net profits realized by an individual or a partner from the business of manufacturing.

Order affirmed.