## Rose Township v. Hollobaugh.

Argued April 14, 1955. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, and WOODSIDE, JJ. (HIRT and ERVIN, JJ., absent).

*William J. McKnight,* for appellant.

*Donald J. Dennison,* with him *Raymond E. Brown,* and *Thomas D. Stauffer,* for appellee.

OPINION BY WOODSIDE, J., August 3, 1955:

This appeal questions the legality of a tax resolution passed by a township of the second class subsequent to the adoption of a budget in which the receipts from the tax were not contemplated.

On March 3, 1952 the Supervisors of the Township of Rose in Jefferson County adopted a budget for the fiscal year beginning on the first Monday of January 1952 and ending on the first Monday of January 1953 as required by section 902 of The Second Class Township Code of May 1, 1933, P. L. 103 as amended and reenacted by the Act of July 10, 1947, P. L. 1481 and further amended in 1949, 53 PS §19093-902.

By resolution adopted the same day the supervisors levied a tax of nine mills upon the real estate of the township.

On May 26, 1952 the supervisors, after the legally required prior notice by publication of their intention

so to do, adopted a resolution purporting to levy a tax upon admissions to drive-in theaters to be collected from July 1, 1952 until January 5, 1953. The resolution set forth that the tax was imposed "for general revenue purposes in pursuance of the provisions of the Act of June 25, 1947, P. L. 1145 as amended" by the Act of September 29, 1951, P. L. 1640, and that the tax was "for fiscal township year beginning the first Monday of January 1952 and ending the first Monday of January 1953."

The resolution further provided as follows: "The reason which, in the judgment of the said Township supervisors, necessitates the imposition of the said tax is the repair of the township roads.

"The amount of revenue estimated to be derived from such tax is $2,000.00".

The defendant, who opened a drive-in theater in the township, refused to pay the tax levied under the aforesaid resolution for the year 1952, and the township sued him in assumpsit.

After a second amended complaint, an answer thereto with new matter and a plaintiff's reply were filed, a motion was made by the plaintiff for judgment on the pleadings.

President Judge MORRIS for the court below dismissed the motion and entered judgment for the defendant. This appeal followed.

Two questions are presented to us, both of which the lower court decided against the township.

These questions are stated by the appellant, in substantially the same language as they were stated by the court below, as follows:

"1. Where the Supervisors of a township of the second class adopt a budget, in the manner and within the time prescribed by law, may they, approximately two months later, under the Act of June 25, 1947, P. L.

1145, as amended by the Act of September 29, 1951, P. L. 1640 (53 PS §2015.1 et seq.), levy a tax upon admissions to drive-in theaters, the estimated revenue from which was not included in such budget as an item of anticipated revenues and was not appropriated therein for highway or other purposes?

"2. Where the Supervisors of a township of the second class, simultaneously with the adoption of their annual budget, and at the time and in the manner provided by law, levy an annual tax of nine (9) mills on each dollar of assessed valuation of taxable property in the said township, for 'road, bridge and general township purposes', which is the maximum millage permitted by law without the approval of the Court of Quarter Sessions, as provided by Section 905 A-1 of the Act of May 1, 1933, P. L. 103, as last amended by the Act of May 24, 1951, P. L. 370 (53 PS 19093-905), which they did not obtain, may they later, in the same year, levy a tax on the admissions to drive-in theaters under the Act of June 25, 1947, P. L. 1145, as amended by the Act of September 29, 1951, P. L. 1640 (53 PS §2015.1 et seq.) ?"

A negative answer to either or both of the foregoing questions of law will necessarily invalidate the tax purported to have been levied by the resolution of May 26, 1952.

The precise questions here presented have never been decided by the appellate courts. The answers will be a matter of importance in the operation of the governments of our political sub-divisions.

A brief review of the legislative history of the relevant statutes may be helpful. As the original sources of income, almost entirely from real estate, proved insufficient to meet the increasing costs of local governments, pressure was brought upon the legislature to authorize the tapping of previously forbidden fields of

taxation. As a result the legislature passed the above act of 1947, which became known as Act No. 481 because so frequent reference was made to it before the pamphlet laws were published) and as the "tax anything" act, (because that phase so aptly describes it). It was, in a sense, revolutionary in that it reversed an age old governmental policy of spelling out in detail a limited field within which local governments could tax. This act, which for convenience sake we shall hereafter refer to as Act 481, authorized political subdivisions, with a few limitations, to tax anything. Thus the state passed from a policy of saying to its subdivisions "tax nothing except", to one of saying "tax anything except."

It was originally conceived as an emergency act, but can now be accepted as a permanent new Commonwealth policy on local taxation.

As originally passed, this act related to cities of the second, second A, and third classes, boroughs, towns, townships of the first class, and school districts of the second, third and fourth classes. Subsequently, by the amendment of September 29, 1951, P. L. 1640 it was extended to cover townships of the second class, although the fields within which they were permitted to tax were specified and limited.

Prior to the passage of Act 481 there had developed a number of important codifications of the law into which the act had to be correlated. Among them were The General Borough Code reenacted in 1947 as The Borough Code, The Third Class City Law reenacted in 1951 as The Third Class City Code, The First Class Township Law reenacted in 1949 as The First Class Township Code, The Second Class Township Law reenacted in 1947 as The Second Class Township Code and the School Code reenacted in 1949 as the Public School Code of 1949.

Each of these codes has a provision relating to the budget. Each also has a provision setting forth what may be taxed and the limit of the taxes which may be imposed.

All these codes were developed through many years of amendments, supplements, modifications and recodifications. Many of their provisions are similar in import, but different in language. Ordinarily when a change in the governmental operation of any of these units of local government is intended the appropriate code is amended. In this manner the draftsmen are able to coordinate and consolidate the various provisions with greater skill than is possible when a single act is prepared to relate to all of the codes.[1]

It was to be expected that Act 481, which completely reversed a governmental policy and whose language and purpose had to be correlated to all the different codes, would pose many new and difficult problems both to the legal profession and local government officials. This is one of them.

Before entering upon a discussion of the particular problems it might be well to set forth certain rules to guide our thinking.

In the first place it must be remembered that a municipal corporation can levy no taxes upon inhabitants or their property unless the power to do so is plainly and unmistakably conferred by the legislature. The grant of such right must be strictly construed and not extended by implication. *Breitinger v. Philadelphia*, 363 Pa. 512, 514, 70 A. 2d 640 (1950) ; *Hillman Coal*

---

[1] As a result of the early establishment of the Legislative Reference Bureau, its talented personnel through the years, and its extensive use by legislators, the statutes of this Commonwealth are as well drafted as those of any government in the nation. Bill drafting is so difficult, however, that to even approach perfection is impossible.

& Coke Co. v. Jenner Twp., 300 Pa. 108, 112, 150 A. 293 (1930). Act 481 authorizes the township to impose taxes and such authorization must be strictly construed against the township. *Fischer v. Pittsburgh*, 178 Pa. Superior Ct. 16, 112 A. 2d 814 (1955).

In the second place to determine the intent of the legislature in a matter of this kind we cannot confine our consideration to a few particular phrases of Act 481 and the codes involved, but must in addition thereto give careful attention to the intent and purpose of the entire acts. To be governed by a few phrases isolated from the body of the acts in question, without considering their relation to the acts as a whole, might defeat and destroy a purpose to which the legislature has devoted pages of statutory provisions.

With these guides in mind let us turn to The Second Class Township Code, supra, which we shall hereafter refer to as the Township Code.

Section 902 provides in great detail matters relating to the adoption of the budget, setting forth the time when it must be done, the procedure that must be followed, the notices that must be given, the forms that must be used, and many similar matters, as reference thereto will indicate. *It requires the budget to show the estimated revenues and expenditures* including the amount of money necessary for (a) roads, (b) culverts and bridges, (c) equipment, machinery, teams and implements, (d) each other governmental activity, (e) debts and other miscellaneous purposes. This itemizing of estimated expenditures is for the purpose of determining how much tax to levy.

The budget required is more than a mere estimate of probable revenues and expenditures. It is a method whereby expenditures are controlled and limited during the fiscal period by designating the amount of money legally at the disposal of the supervisors and

the purpose for which it may be expended. *Kistler v. Carbon County,* 154 Pa. Superior Ct. 299, 301, 302, 35 A. 2d 733 (1943). These budget provisions are not directory but "in the highest degree mandatory." *Leary v. Philadelphia,* 314 Pa. 458, 472, 172 A. 459 (1934).

The Supreme Court has required such strict compliance with the provisions of this section that township supervisors have been removed from office for failure to comply with them, even when the supervisors were depending upon their solicitor to file the required reports. *Crane's Appeal,* 344 Pa. 624, 26 A. 2d 457 (1942), and others have been surcharged for making disbursements without previous appropriations according to the provisions of the section even though the township received a reasonable quid pro quo for the unauthorized outlays and no fraud or dishonesty on the part of the supervisors was shown. *Lower Nazareth Township Supervisors' Appeal,* 341 Pa. 171, 19 A. 2d 92 (1941).

In *Dunkard Township School Tax Case,* 359 Pa. 605, 60 A. 2d 39 (1948) the court permitted a school district to impose a tax under Act 481 after the budget had been approved but the court placed its decision on the ground that the Act of July 5, 1947, P. L. 1266 specifically authorized a revision of the school budget for that year.

Justice, now Chief Justice STERN, indicated that the right not only to revise the budget but also to provide for additional revenue was limited to the one fiscal year.

Provisions concerning budgets have been in the second class township law for many years, but the budgetary requirements imposed upon the supervisors have become more strict and detailed with the passing years.

It is vital for the good administration of municipal affairs for its officials to budget expenditures for the necessary functions and thereby determine the amount of tax necessary for the operation of the municipality for the ensuing year. It was for the purpose of protecting the public against extravagance and waste in local government that the budget provisions were made more stringent over the years both by statutes and court decisions.

Act 481 was not intended to change the provisions relating to budgets. It did not deal with budgets. Nothing in its title indicates it relates to the budget provisions in the codes. The act as amended in 1951 was designed to change the limitation on taxation imposed by section 905 of the Township Code.

Section 905 (53 PS §19093-905) provides that township supervisors may levy taxes for roads, bridges and general purposes upon real estate and occupations not exceeding nine mills, except upon petition to the court of quarter sessions which may authorize an increase of not over five mills. It further authorizes taxes for such other purposes as lighting, fire hydrants, fire fighting equipment, and parks. In each instant it limits the amount of the tax which can be imposed, and outlines the circumstance under which it can be imposed. It authorizes the imposition of tax upon nothing except real estate and occupations and on these only within the limits there expressed.

It was the sections in the various codes corresponding to section 905 of the Township Code, and not the sections corresponding to section 902 (the budget provision), which created the emergency and brought about Act 481. It was the provision in all the codes corresponding to section 905 of the Township Code which Act 481 was designed to change, and which in effect are amended by Act 481.

The appellant argues that no statute says specifically (except as to school districts) when a tax imposed under the authority of Act 481 must be levied, Section 902 of the Township Code says: "Said budget *shall reflect* as nearly as possible *the estimated revenues* and expenditures of the township *for the year* for which the budget is prepared." (Emphasis ours) The "said budget" refers to the *proposed* budget, and to be sure that neither the supervisors nor the courts misunderstand the meaning of "as near as possible" the legislature provides that where the proposed budget is increased in the aggregate more than ten percent or more than 25 percent in an individual item, the tentative budget "shall be presumed inaccurate," and readvertised before adopted.

When section 902 of the code says the "budget shall reflect . . . the estimated revenues . . . for the year," it means revenues realized from taxes imposed under the authority of Act 481 as amended as well as revenues realized from taxes imposed under section 905. If revenues from taxes imposed under Act 481 as amended are not included in the budget it is a violation of section 902.

If we were to decide that a municipality could enact new tax legislation and appropriate the proceeds therefrom after the budget was adopted, we would, to a great extent, destroy the value of the provisions relating to budgets. We think that was not the intent of the legislature in passing Act 481 and its amendments.

Local officials are not put in a straight-jacket by the budget provisions. They have authority to meet unexpected expenses and unforeseen emergencies. But the law definitely seeks to limit and control their expenditures.

Section 902 of The Township Code, supra, contains the following:

"(4) The supervisors may at any time by resolution make supplemental appropriations for any lawful purpose from any funds on hand or estimated to be received within the fiscal year and not otherwise appropriated, including the proceeds of any borrowing authorized by law. Such supplemental appropriations may be made whether or not an appropriation for the same purpose was included in the original budget as adopted, except that no supplemental appropriation shall be made for any purpose in respect to which the court on an appeal pursuant to section nine hundred eight of this act has ordered a specific reduction or elimination of an item of the original budget for the same purpose.

"(5) The supervisors may by resolution, transfer unencumbered moneys from one township account to another, but no moneys shall be transferred from the fund allocated for the payment of debts or from any fund raised by a special tax levy for a particular purpose. Such transfers shall not be made during the first three months of the fiscal year . . ."

Laws relating to school districts and other municipalities have different provisions, but carry out, in varying degrees, the same principle.

The very purpose of a budget is to prevent a situation such as probably happened in this very case. After the budget was adopted the supervisors suddenly discovered a new source of taxation which had not previously existed in the township. Had not this new source of revenue been discovered, the township undoubtedly would have operated according to the budget. But with new sources of revenue available, new and increased expenditures were planned. The budget

increased although the need for expenditures probably did not.

This is the reverse procedure from that which is contemplated in the function of a municipal budget. The preparation of a municipal budget contemplates a determination of the necessary expenditures and then the imposition of the tax required to meet them.

If municipalities generally, whose power to tax under Act 481 is almost as unlimited as the imagination of man, were now permitted to impose a tax on almost any conceivable thing for any allowed purpose at any time after the adopting of a budget, why have a budget?

Considering all the requirements imposed by statute relating to budgeting, and the strict interpretation placed upon these provisions by the courts, we think the township supervisors had no authority to levy a tax for general purposes or for highway purposes for the year 1952 subsequent to the adoption of their budget and not contemplated therein.

It is argued that since the Public School Code of March 10, 1949, P. L. 30 (24 PS §6-603), in Section 603 by a separate and specific provision limits school districts to only one levy of school taxes in each year, while The Second Class Township Code contains no such provision, the legislature did not intend to limit the time when townships could levy taxes authorized by Act 481 as amended.

This provision of the Public School Code has been in the law since before the present statutes and theories of municipal budgeting were adopted. Because a separate section of the school code prohibits the imposition of school taxes more than once a year, it does not follow that the budget provisions of The Second Class Township Code could not require the estimated revenue of a tax to be included in the budget. We

think section 902 of the Township Code does require the estimated revenue for each year to be included in the budget of that year.

Because such a provision is specific in one act does not necessarily mean that it cannot be implied from different language in another.

In 1953 the legislature amended Act 481 by providing, inter alia, that "Every ordinance or resolution which imposes a tax under the authority of this act shall impose such tax for one year only *and shall be passed or adopted, if for a school district, during the period other school taxes are required by law to be levied* and assessed by such district." . . . (emphasis supplied)

It is argued that this indicates that it has been the intent of the legislature that all political subdivisions except school districts may impose any tax authorized by Act 481 at any time,—that is after the budget has been adopted.

Although there is nothing illogical in this argument, its use has practical aspects which should give courts cause to pause. It is permitting a legislature, which met after the case before us arose, to say "this is what was meant and intended by the statute under which the case arose." As a general rule the legislature has no right to say subsequent to the time a case arises what it meant by a previously enacted statute which governs the case. If we were to give weight to the plaintiff's argument on this point many litigants might be wise to abandon lawyers for lobbyists, as their case might depend not so much on what the court is persuaded to decide as what the legislature is persuaded to do.

On the second question we do not agree with the learned lower court. Section 905 of the Township Code,

53 PS §19093-905 provides, inter alia, as follows: "1. An annual township tax for road, bridge, and general township purposes, not later than the fourth Monday of March of each year, not exceeding nine mills. Where the board of supervisors by a majority action, shall, upon due cause shown, petition the court of quarter sessions for the right to levy additional millage, the court, after such public notice as it may direct and after hearing, may order a greater rate than nine mills but not exceeding five additional mills, to be levied. Such annual township tax shall include all levies for road, bridge and general township purposes."

Act 481 contains the following: "Any tax imposed under this act shall not be subject to any limitation under existing law as to rate or amount." 53 PS §2015.6.

Section 905, not the budget section, was the provision which Act 481 as amended, intended to change and expand. We think it is clear that the limitation on the amount of tax contained in clause 1, supra, was meant to apply only to the millage tax referred to in that clause and not to a tax imposed under Act 481 as amended. The legislature made it clear that the limitation contained in section 905 did not limit or prevent the imposition of a tax under Act 481 as amended. The resolution provided that the tax it was imposing was for general purposes as is authorized by said act.

It is not necessary for the supervisors to petition the court of quarter sessions for the right to impose a tax under Act 481 as amended even if a levy of nine mills is made for the same year, nor are the supervisors prevented from imposing a tax under Act 481 as amended and using its proceeds for road purposes, merely because they levy a tax of nine mills for road purposes for the same year. This, of course, assumes

that the resolution levying the tax authorized under Act 481 as amended, is passed at the proper time.

Although the motion was made by the plaintiff for judgment on the record the lower court entered it for the defendant. Under Pa. R. C. P. 1034 (b) judgment on the pleadings may be entered for the party entitled thereto without regard to which party moved for judgment. *Boron v. Smith,* 380 Pa. 98, 110 A. 2d 169 (1955).

For the reasons set forth in this opinion the judgment is affirmed.

————

DISSENTING OPINION BY WRIGHT, J.:

Lord Bacon wisely said that the function of judges is *jus dicere,* not *jus dare.* I respectfully submit that the majority opinion constitutes judicial legislation. The result is that, once a township of the second class has adopted its annual budget in conformity with section 902 of the Second Class Township Code, Act of May 1, 1933, P. L. 103, as amended, 53 PS 19093-902, it is thereafter prohibited from levying a tax under Act 481 of June 25, 1947, P. L. 1145, as amended, 53 PS 2015.1 et seq. Had the legislature intended Act 481 to be thus limited it would have said so. Neither the title nor the body of the statute gives any indication whatever that such a result was contemplated. The majority opinion reads something into Act 481 which is not there.

Nor does the annual budget of a second class township possess the sacred character given it by the majority opinion. Section 902 of the Second Class Township Code expressly provides that supervisors may at any time make supplemental appropriations from funds on hand or estimated to be received "whether or not an appropriation for the same purpose was in-

cluded in the original budget as adopted". It should be further noted in this connection that the Second Class Township Code does not prohibit more than one tax levy in each year, as does the Public School Code.

Finally, and above all, the majority opinion completely disregards the legislative interpretation of Act 481. See section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551. What better judge of legislative intention can there be than the legislature itself. Act 481 was amended by the Act of May 27, 1953, P. L. 234, as follows: "Every ordinance or resolution which imposes a tax under the authority of this Act shall . . . be passed or adopted, *if for a school district,* during the period other school taxes are required by law to be levied and assessed by such district (italics supplied)". This amendment shows conclusively that the intention of the legislature was, and is, that political subdivisions, except school districts, may impose taxes under the statute at any time.

I would reverse the judgment of the lower court, and would here enter judgment for the appellant.