## Lower Nazareth Township Supervisors' Appeal.

Argued January 30, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Russell C. Mauch,* of *Mauch & Goodman,* with him *Robert E. Woodside, Jr.,* and *Joseph A. Longo,* for appellants.

*Calvin F. Smith,* of *Smith & Paff,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, March 24, 1941:
Herbert T. Lilly et al., appellants, challenge the propriety of a surcharge imposed upon them by the township auditors, following the audit and settlement of their accounts, as supervisors of Lower Nazareth Township, for the fiscal year ending January 1, 1939. The

subject matter of the surcharge, aggregating $11,452.72, is moneys expended on contracts let for the repair and maintenance of highways in excess of the sums budgeted and appropriated for such purposes.

The "Second Class Township Law" of 1933, as amended by section 3 of the Act of June 5, 1937, P. L. 1738, provides, in section 902, that "No money shall be paid out of the township treasury except upon appropriation made according to law." And, in section 802, as amended by section 2 of the Act of June 5, 1937, it is provided that "The supervisors shall not hire any work to be done, purchase any material, or make any contract in any amount which shall cause the sums appropriated for such purposes to be exceeded"; further, that "No contracts or purchases not provided for by an appropriation, or which shall cause any appropriation to be exceeded, shall be valid." As the disbursements in question were made without previous appropriation according to law and in payment of obligations legislatively declared to be beyond the power of the supervisors to incur and utterly void, they were clearly illegal. Notwithstanding that this is so, appellants contend that in the absence of proof that the township suffered actual pecuniary loss as a result of the transactions, the surcharge was nevertheless improperly imposed under section 545 of the Act of 1933, as amended by the Acts of July 18, 1935, P. L. 1299, and May 28, 1937, P. L. 937, providing that "Any officer, whose act or neglect has contributed to the financial loss of any township, shall be surcharged by the auditors with the amount of such loss." It is conceded that the township has received, in maintenance and improvement of its highways, a reasonable *quid pro quo* for the unauthorized outlays, and that no fraud or dishonesty on the part of appellants has been shown.

The right to surcharge township officers is not new, as appellants state. Section 1 of the Act of June 9, 1911, P. L. 865, from which the surcharge provision

contained in section 545 of the "Second Class Township Law" has been derived, almost verbatim, provided as follows: "Be it enacted, &c, That hereafter the auditors whose duty it shall be to audit the accounts of the officers of *any* borough, *township,* poor district, or school district . . . shall meet annually, on the day following the day which has been or shall be fixed by law for the organization of borough councils, *township supervisors,* or commissioners of any township, directors of any poor district, or school district, respectively, and shall forthwith proceed, in the respective instances, to audit, settle, and adjust the accounts of the burgess, members of the council, treasurer, street commissioner, and other officers, either appointed or elected, of the borough; of the *supervisors* or commissioners, roadmasters and treasurer *of the township;* of the directors or overseers, treasurer, of the poor district; of the directors and treasurer of the school district, and of the tax collectors of each of said municipalities or districts; *and any such officer whose act or neglect shall have contributed to the financial loss of any municipality or district shall be surcharged with the amount of such loss."*

Construing the Act of 1911, this Court said, in *Hanover Township School District's Audit,* 265 Pa. 157, 164: "Finally appellants argue the surcharge was improper because evidence was wanting tending to show the municipality actually suffered financial loss through fault or neglect of the directors, within the meaning of the Act of June 9, 1911, P. L. 865, providing for the surcharge of officers 'whose act or neglect shall have contributed to the financial loss of any municipality or district' and, so far as appears from the record, the school district received full value for the money paid. . . . If the term ["financial loss"] is to include only the difference between the contract price and the actual value of the work done, thus involving a consideration of the details relating to the performance of the contract, prices, etc., and not the entire loss resulting from

the drawing and payment of an order pursuant to a contract illegal because made in violation of the express provisions of the code, such construction would, in effect, nullify the requirements as to public bidding and permit directors to award contracts to favorite bidders. . . . While our conclusion imposes a heavy burden upon appellants, the court is without power to relieve them from the effect of their own carelessness or error, whichever it may be." Again, in *Chester School District's Audit,* 301 Pa. 203, the following appears, at 214: "Over and over again appellants ask us to reverse the court below simply because, as they aver, the school district did not suffer any loss from their breach of duty, and they did not individually make any gain. Assuming the facts to be so, we can sympathize with their feelings, but their arguments are addressed to the wrong tribunal. All they have to say on these points was urged by other able counsel, with equal strenuousness, in *Hanover Township School District's Audit,* 265 Pa. 157. We were compelled to overrule them then, and are required to do so now, especially as there have been five biennial sessions of the legislature since that decision was rendered, and . . . our construction of the statute has not been changed by subsequent legislation."

The language of section 545 being identical with that of section 1 of the Act of 1911, which applied to and governed the surcharge of township supervisors as well as, inter alia, school directors, appellants' contention that the decisions referred to are not controlling in determining payments or acts necessary to constitute "financial loss", within the meaning of the "Second Class Township Law", is untenable. It is a well settled rule of statutory construction, codified by section 52 of the "Statutory Construction Act" of 1937, P. L. 1019, subsection (4), that "where in a later act the legislature uses the same language as in a prior cognate statute, which had been construed by us, the presumption is that the language thus repeated is to be interpreted in the same way it previously had been when consider-

ing the earlier statute": *Buhl's Estate,* 300 Pa. 29, 32. See also *Bell v. Bell,* 287 Pa. 269.

The construction of section 545 contended for by appellants is not only unwarranted under all the authorities,[1] but is not sustainable as a matter of principle. To adopt it would be to render wholly abortive not alone the salutary requirement that township supervisors shall pay moneys out of the township treasury only upon appropriation made according to law, but all the mandatory requirements of the law regarding the making of contracts on behalf of such municipal subdivisions, thus depriving the people of the protection against their own representatives, which it is the purpose of the legislature, in imposing such requirements, to secure to them, and would expose the public funds to raids of every conceivable form. As the court below aptly states: "Despite the value of the consideration obtained through illegal contracts, making contracts in violation of the Township Law, whether negligently or intentionally, and exceeding the moneys budgeted and appropriated, must be regarded as acts which occasioned the township a financial loss within the meaning of the statute. Were any other construction sanctioned, township officers would be encouraged to enter into unauthorized contracts and the only protection afforded the taxpayers would be in the timely discovery and enjoining of the invalid contract. Thoroughly extravagant contracts for unnecessary work and materials could be made, provided the work given or material furnished constituted fair consideration. Such impunity, we do not believe, the legislature intended that township supervisors enjoy."

The judgment of the court below is affirmed.

---

[1] In addition to the decisions referred to, see: *Commissioners of Lycoming v. The County of Lycoming,* 46 Pa. 496; *Kreusler v. McKees Rocks School District,* 256 Pa. 281; *In Re: School Dist. of Mauch Chunk Twp.,* 75 Pa. Super. Ct. 434; *In Re: Appeal of Sykesville Borough,* 91 Pa. Super. Ct. 335; *In Re: Report of Twp. Aud. of Coal Twp.,* 95 Pa. Super. Ct. 401.