**Audit of Township of Falls 1957 to 1968**

*David H. Moskowitz,* for appellants.

*Samuel Snipes,* for appellee.

BODLEY, J., July 9, 1971.—On or about February 29, 1968, the duly elected auditors of Falls Township, Bucks County, filed their report for the year 1967, as required by law. They found no fault with the financial operations of the township during the period in question. Certain contrary-minded citizens of the township, however, alleging that the auditors' report was "inaccurate, invalid, misleading and untrue," filed a timely appeal from the report and, after setting forth in abundant detail the alleged bases for the appeal, asked the court to declare null and void any and all invalid expenditures and sought to have the members of the board of supervisors and township treasurer surcharged for any such illegal expenditures.

We previously disposed of preliminary objections to the appeal filed on behalf of the supervisors (19 Bucks Co. L. Rep. 87, 1969) and, having thereafter

received testimony and certain stipulations of factual matters from the opposing parties, we now have the merits of the appeal before us for disposition.

As indicated above, the appellants have pointed to numerous alleged errors and omissions, many of which are, factually, somewhat complex and most of which would require much discussion of background information before each could individually be placed into proper perspective. Consideration of appellants' bill of particulars, so to speak, would, therefore, be burdensome and would serve no useful purpose as will be shown in a moment. In large part, the facts are undisputed. Rather, the significant questions before the court relate to the legal consequences of the supervisors' acknowledged acts of omission and commission which form the bases of the appellants' complaints.

We believe that all of the arguably meritorious issues raised by the appellants can be considered and disposed of by the resolution of the following questions:

1. Is it lawful for a second class township to authorize expenditures in excess of its budget appropriations and revenue?

2. Is a township required to make its capital improvement loan installment payments on time?

3. Is a township required to pay off a tax anticipation loan as soon as sufficient revenues are in hand?

4. Did the supervisors of Falls Township exercise sound discretion in their contractual and fiscal dealings with a corporation engaged by the township to handle its waste disposal problems?

## I. EXCESS EXPENDITURES

There is no doubt that the supervisors of Falls Township in the year 1967 authorized expenditures in excess of the amount budgeted and in excess of

the amount received by the township. The 1967 budget contemplated expenditures of $941,739.49 for governmental purposes. In point of fact, as reflected by the annual financial report which is the subject of this appeal, total expenditure for these purposes was $1,142,136.86. The supervisors thus authorized expenditures of $200,397.37 in excess of that sum which had been anticipated to be spent when the 1967 budget was prepared. It is also conceded that the sum spent exceeded total revenue receipts of the township for the year, $1,122,149.69. It is the view of appellants that the allegedly errant township supervisors should be surcharged and thus made personally liable to the township and directed to repay the total over-expenditure.

Directives relating to the fiscal management of a second class township are to be found in the Second Class Township Code of May 1, 1933, P. L. 103, art. IX, sec. 902, as amended by the Act of December 14, 1967, P. L. 816, sec. 4, 53 PS §65902.A. In relevant portion, the statute provides, with respect to the township's budget, the following:

"(1) . . . Said budget shall reflect *as nearly as possible* the estimated revenues and expenditures of the township for the year for which the budget is prepared . . .

"(3) The total appropriation *shall not exceed* the revenues estimated as available for the fiscal year . . .

"(4) The supervisors may *at any time by resolution make supplemental appropriations* for any lawful purpose from any funds on hand *or estimated to be received* within the fiscal year and not otherwise appropriated, including the proceeds of any borrowing authorized by law. Such supplemental appro-

priations may be made whether or not an appropriation for the same purpose was included in the original budget as adopted. . . .

"(5) The supervisors may by resolution transfer unencumbered moneys from one township account to another, . . . No money shall be paid out of the township treasury *except upon appropriation made according to law.*" (Italics supplied.)

Appellants do not maintain that the sum mentioned above, although clearly in excess of the amounts budgeted, was spent for other than proper township purposes. Nor do they maintain that the supervisors or any of them have committed fraudulent, collusive, or otherwise dishonest acts. They insist, however, that the mere overspending on the part of the supervisors subjects them to surcharge in this action. Further, the appellants acknowledged that although the total governmental expenditures of $1,142,136.86 exceeded both the budget figure of $941,739.49 and the total revenue receipts of $1,122,149.69, all expenditures were authorized by the supervisors pursuant to resolutions duly adopted at properly advertised public meetings.

Section 545 of the Second Class Township Code, 53 PS §65545, provides for surcharge of officials in the following language:

"Any elected or appointed officer, whose act, error or omission has contributed to the *financial loss* of any township, shall be surcharged by the auditors with the *amount of such loss*, and the surcharge of any such officer shall take into consideration as its basis, the results of such act, error or omission and the results had the procedure been strictly according to law. The provisions hereof limiting the amount of any surcharge shall not apply to cases involving fraud

or collusion on the part of such officers . . ." (Italics supplied.)

and section 103, as amended, provides that:

"Any officer whose act or neglect has contributed to the financial loss of the township shall be surcharged by the auditors with *the amount of such loss.*" (Italics supplied.)

As required by law upon an appeal from an auditors' report, we have reviewed the report de novo, and have considered all the accounts as if they were presented to us in the first instance. See In Re Canton Twp., Washington County (Draper Appeal), 412 Pa. 26 (1963).

The term "surcharge" is of ancient origin and has many present-day meanings. Historically, in the English common law "surcharge" meant "to put more cattle upon a common than the herbage will sustain or than the party had the right to do." More nearly approaching modern day legal definitions of "surcharge" is the historical definition found in actions of equity: the proving of an ". . . omission of an item from an account which is before the court as complete, which should be inserted to the credit of the party surcharging . . . It is opposed to the concept of [falsification]." See Bouvier's Law Dictionary, 3rd Rev., 1914.

Webster's Unabridged New International Dictionary, 2d Ed., 1957, attributes the same meaning to the word and in 83 C. J. S. surcharge is said to mean, generally, ". . . to signify the penalty exacted against a fiduciary for failure to exercise common skill and common caution in the performance of his duty." As condensed in P. L. E. Townships, §38, at p. 202, the principle is articulated in this fashion:

". . . any officer whose act or neglect has con-

tributed to the financial loss of a township will be surcharged with the amount of such loss."

It will be noted that in each modern definition the concept of recompense for loss sustained is suggested rather than punishment for misbehavior in office. Other remedies exist for such latter conduct and we are not here concerned with them. There was a time, however, when the statute was so written that surcharge was required, financial loss or not, for excessive spending. Then, the mere act of expending township funds in an amount exceeding the sum budgeted, whether intentionally or negligently, was regarded as an act causing financial loss to the township, even though no actual loss was sustained. And even though a reasonable quid pro quo was received and there was no fraud or dishonesty on the part of the supervisors, the courts interpreted the Second Class Township Code to require surcharge. See Lower Nazareth Township Supervisors' Appeal, 341 Pa. 171 (1941). Such an interpretation of section 902 as then written was reasonably required since it then prohibited without reservation the supervisors from having any work done and from purchasing any material or making any contract in any amount which might cause the appropriations in the township budget to be exceeded.

However, a more enlightened and realistic view was taken by the legislature with the passage of the amendments to section 902 enacted July 10, 1947, P. L. 1481, sec. 11, and April 20, 1949, P. L. 634, sec., 1. These amendments made it clear that a budget is simply that; namely, a fiscal projection based upon past experience and upon anticipated future occurrences. Thus, the 1949 amendment, in part, stated that a budget should "reflect *as nearly as possible*

the estimated revenues and expenditures . . ." Indeed, this is all that is ever humanly possible.

And the 1947 amendment, recognizing that a budget once fixed is not a sacred immutable thing, realistically provided that the supervisors might, during the fiscal year and after the final approval of the current year's budget, make supplemental appropriations and transfer funds from one account to another. The legislature went on to delete that provision in section 902 which proscribed spending in any amount exceeding the sum budgeted.

Just as in the case of the management of private business affairs, however, and perhaps more so, there is a need for orderliness, consistency and accurate record keeping in the management of public fiscal matters. One who assumes the post of township supervisor assumes a position of public trust, and must account to his constitutents for his handling of public affairs just as the corporate business executive must account for his stewardship to his board of directors and ultimately to the company's stockholders. Hence, the legislature has fixed certain reasonable rules of the game to be followed by the public officer. The township supervisor must be presumed to know these rules and must be held accountable for his township's loss, if any, which follows his neglect, willfully or otherwise, to adhere to them.

As noted in our earlier opinion, 19 Bucks 87, 1969, the township's auditors are not subject to surcharge and, hence, the many specifications of fault attributed to them by appellants in the original appeal can be disregarded. It also appears that appellants have abandoned their quest for surcharge against the township treasurer, since they have not pressed this claim in the brief submitted to the court on their behalf. In any event, the evidence offered by the appellants does

not support a claim of surcharge against this appointed officer. Hence, we deal only with the claim that the township supervisors, or some of them, should be held personally liable for their alleged delinquencies. And as noted heretofore, no claim has been put forward to the effect that any of the defendants committed fraudulent or dishonest acts. Rather, the action is based solely upon the alleged neglect on the part of the supervisors of technical legal requirements and upon certain transactions which allegedly led to the township's monetary loss.

On the score of having spent sums in excess of the budgeted amounts, admittedly without having adhered to the formality of adopting resolutions calling for supplemental appropriations, we hold as did the Luzerne County Court that although a formal resolution of appropriation is technically required by statute and is certainly a most desirable procedure on the part of supervisors in such a case, there is no "magic" in the words by means of which an appropriation is made. As in the Luzerne County situation, we find that all payments were made pursuant to lawful motions made and carried at duly advertised public meetings. When any such motion called for a payment of a sum which exceeded the amount previously appropriated, we find that the resolution authorizing payment was indeed "an appropriation," keeping in mind that the term simply denotes that which is set aside for a special purpose. See In Re Appeal from Hazel Township Audit 1957 (No. 2), 51 Luzerne Reg. 207 (1958).

We, therefore, find that the supervisors of Falls Township are not subject to surcharge for their having spent on behalf of the township the various sums complained of in excess of the amounts budgeted for the year 1967. In so finding, we are quick to declare

that the method by which the Falls Township supervisors spent these excess sums, failing as they did to adhere closely to the statutory requirements, is not to be condoned, and we admonish these and all other township officials to act in strict accordance with the enabling legislation.

We find that the authorities relied upon by the petitioners in support of their contrary view are not apposite. Lower Nazareth Township Supervisors Appeal, supra, is based upon the now repealed provisions of section 902 which we touched upon heretofore. Their reliance upon Rose Township v. Hollobaugh, 179 Pa. Superior Ct. 284 (1955), and Mastrangelo et al. v. Buckley et al., 433 Pa. 352 (1969), is misplaced, since the sole concern of the appellate court in those cases was interim taxing power, complicated in Mastrangelo by the need to construe the First Class City Code as well as the Philadelphia Home Rule Charter. We might note, however, that nowhere in Mastrangelo did the Supreme Court find fault with the fact that the various city departments exceeded their budgets by significant amounts.

## II. CAPITAL IMPROVEMENT LOAN

Here, appellants claim that the supervisors expended money for various capital improvements before they received the proceeds of a capital improvement loan which they sought in December 1967, but did not actually receive in hand until January 1968. The record shows, however, that the supervisors had reasonable expectation of the receipt of the proceeds of the loan in question during fiscal 1967, although due to unforeseen circumstances the applied-for loan was not routinely approved as anticipated. Under these circumstances, the requirements of section 902A(4) are deemed to have been fulfilled. That sec-

tion, in part, provides that "The supervisors may at any time by resolution make supplemental appropriations for any lawful purpose from any funds *on hand or estimated to be received within the fiscal year* and not otherwise appropriated, *including the proceeds of any borrowing authorized by law.*" (Italics supplied.) The mere fact that expenditures were made before the proceeds of the loan were received and the fact that the fund was not actually received until the following fiscal year, standing alone, is insufficient to establish appellants' claim of surcharge. Indeed, there is no attempt to show loss to the township by virtue of this fortuity.

More particularly, however, the appellants point out that an installment upon a 1966 capital improvement loan of $120,000 bearing four percent interest, which was due on October 26, 1967, was not paid on time by the supervisors. The installment amounting to $24,000 was finally paid April 4, 1968, and the parties to the action agree that the additional interest expense to the township resulting from the payment in April 1968 rather than in October 1967 amounted to $400.

We are here dealing with the Act of June 25, 1941, P. L. 159, art. VII-A, section 701-A to section 704-A, as amended, 53 PS §6711, known as the "Municipal Borrowing Law." In brief, under these sections, a municipality is authorized to borrow money for capital improvements, including municipal equipment, but is mandated to repay the loan within five years and is further required to pay at least one-fifth of the principal, together with interest, each year. Although the statute also permits payment in full or in part each year when tax moneys are available and permits *reborrowing* during the latter part of the fiscal year, we find that, in unequivocal language, the

legislature mandated, in such cases, that the municipality *repay* at least one-fifth of the borrowed moneys, even though immediately thereafter it may be required to reborrow within the limitations fixed by the statute.

In the matter before us, it is acknowledged that the supervisors failed to make the required installment payment during the year 1967, reborrowing if necessary, merely retaining the funds set aside for that purpose and expending the same for other purposes. It is clear, therefore, that by such disregard of the statutory requirement, the township supervisors imposed upon the township an additional $400 interest liability. For this act of omission, they, or some of them, must be surcharged if any loss was thereby occasioned. Since the loss to the township, if any, would be determined by deducting from the excess interest payment of $400 the cost of reborrowing the same sum for the same period of time (the due-date being the "latter" part of the year anticipated by the act), plus or minus the interest rate variant, if any, which would have been effective upon a loan in that amount in October 1967, we believe that this should be the measure of damage, since no fraud or collusion has been alleged or proved under the language of section 545 of the Second Class Township Code, supra. Inasmuch as the record contains no evidence from which the court can determine what, if any, sum was actually lost by the township, it follows that we cannot determine the amount of surcharge, if any, to be imposed. A further hearing will be had for the purpose of receiving evidence on this score.

### III. TAX ANTICIPATION LOAN

In similar status is the complaint against the supervisors' nonpayment of the tax anticipation loan when

it became due. We have an insufficient record to permit us to determine what, if any, surcharge should be imposed for the admitted late payment of this loan with the consequential additional interest charge. As in the case of the late payment of the capital improvement loan installment, further hearing will be required.

Briefly, the record shows that the supervisors, by appropriate resolution adopted December 27, 1966, authorized the borrowing of the sum of $300,000 at three percent in anticipation of receipt of future tax revenues. The said resolution went on to appropriate such revenues and set the repayment date as that time when the first tax moneys became available in sufficient sum to make the repayment. It has been stipulated by the parties that, pursuant to the said resolution, the loan was actually made in early January 1967 and received in installments as needed, ultimately totalling $300,000 at three percent interest. Further, it has been stipulated that the township had received tax revenues in a sum in excess of $300,000 on or about July 3, 1967, and that the loan was not, in fact, paid until April 4, 1968. The interest calculations are the subject of agreement among the parties. These figures reveal that a total of $6,898.08 was paid upon the 1967 tax anticipation loan for the period July 3, 1967, when the tax moneys were available to repay that loan, and April 4, 1968, the date of actual payment.

Such a loan is authorized by section 903 of the Second Class Township Code, supra (53 PS §65903), which provides, in part, that ". . . the board of supervisors may borrow . . . money in anticipation of taxes to be collected for the *current* fiscal year and issue a certificate of indebtedness *payable on a certain date within the current fiscal year . . ."* (Italics sup-

plied.) It is, of course, clear that the supervisors neglected, intentionally or otherwise, to abide by the mandate of the legislature. As a result, additional interest charges were incurred by the township. Accordingly, the possibility of surcharge exists. But since there is no evidence in this record upon which the actual surcharge, if any, might be calculated, further hearing must be had. At that time, the court will receive evidence concerning what expenses would have followed, including interest variables respecting loans, if any would have been required, had the supervisors proceeded in a manner authorized by law.

## IV. LANDFILL

The final matter which warrants our attention involves the contractual relationship between the Township of Falls and the Landfill and Development Company (Landfill), a private company which maintains and operates a sanitary landfill within the township. Without developing the history of the relationship prior to the year 1967, it is sufficient to say, for our purposes, that in 1967 Landfill was required by contract to pay the township the sum of $26,000 and the township was required by contract to pay Landfill the sum of $19,500. It is thus seen that after the exchange of payments, the township secured the net sum of $6,500.

The parties have agreed that, notwithstanding Landfill's contractual obligation, it failed to pay the township any part of the $26,000 due it during the year 1967. It was further agreed, however, that a total of $52,000, covering the years 1967 and 1968, was actually paid by the company to the township in 1968. However, the appellants complain by reason of the township's having paid Landfill the sum of $10,000 in 1967 on account of its contractual obligation of

$19,500. The testimony revealed that this sum was paid to Landfill in October of 1967 at a time when the company was in serious financial difficulty. Appellants argue that since the company had not paid the township the sum due it during 1967, the township should not have paid the company any part of that which was owing to Landfill for services rendered the township during 1967. Appellants thus argue that having made the $10,000 payment under the circumstances noted above, the township in effect "loaned" that sum to Landfill contrary to the enabling legislation under which the township must operate.

Examination of the record reveals that neither contractual arrangement recited above prescribed any penalty for late payment or for nonperformance. While it is clear that Landfill, by reason of its financial difficulties, did not, and presumably could not, pay the township that which was due during the year in question, we cannot say that the township was thereby excused from paying to Landfill that which it was obliged to pay under the contract for services rendered the township. Notwithstanding the supervisors' contractual obligation to make quarterly payments to the company, they failed to do so and merely paid a part of the amount due in the latter part of the year.

The appellants wish us to draw an inference from this factual situation which is speculative at best and which completely overlooks the practical and overriding consideration of the need for the township to keep the landfill company operating, since, under other contracts, waste collectors servicing the township were obliged to use the landfill company's site for disposal. Had the supervisors rescinded the contractual arrangements, as it arguably had a right to do by virtue of Landfill's nonpayment, or had it chosen to

exercise a right of set-off which the appellants urge should have been done, the immediate consequence might well have been to foreclose the township's use of the landfill for refuse disposal. It would seem in retrospect that the course followed by the township supervisors was, indeed, the prudent one, since the full amount of Landfill's 1967 contractual obligation was paid the following year and since the landfill continued to operate. We find that the action of the supervisors in this instance did not exceed the bounds of prudence and the exercise of sound discretion. Most certainly, it is no basis for surcharge. The township, it would seem, gained from the complained-of action and suffered no loss whatsoever.

With the above discussion, we believe that we have adequately treated those matters required for our decision, whether some of them might be termed arguably meritorious or merely captious. As we suggested before, the appellants criticize in infinite detail many other aspects of the supervisors' handling of the township affairs in 1967. The appellants' search for defects appears to have been a desperate one. In the appeal filed, 21 separate alleged errors are outlined and attributed to the township auditors. We have no concern with these allegations as noted before. No less than 43 separate items of payment in alleged excess of the corresponding line item in the 1967 budget are painstakingly set forth in criticism of the supervisors, whereas but one general allegation of excess would have sufficed, had appellants' principle been sound.

Six other matters of greater or lesser significance were generously laid at the supervisors' doorstep in appellants' determined effort to support the appeal. In their persistent, if querulous pursuit, they chose quantity rather than quality. They attacked with little

ammunition but in wearisome numbers, so that, while the onslaught was far from being irresistible, it proved more or less vexatious and disagreeable, we are sure, to those on defense.

Two years and more later, after countless hours have been spent by counsel for the township, by counsel for those standing charged individually, by counsel for the appellants and by the court, the record has been laboriously and tediously put together. Many more hours, presumably, will be devoted to the determination of what, if any, loss has actually been sustained by the township in the two isolated instances noted hereinbefore. The voluminous record has been carefully combed by the court in search of substance and little has been found. How much better for all if counsel had shown restraint presenting to the court in the first instance only those few items which under the law are reasonably subject to challenge!

Falls Township, like many more in our growing, changing county, requires the constant attention of those chosen to serve the people. Without directing our remarks specifically toward Falls, nor excepting it, we can say with some degree of certainty that elected township officials, for the most part, spend untold hours at their tasks, receiving little or no remuneration therefor in a conscientious effort to turn in a good performance. They are not omniscient—these part-time administrators of large scale public businesses—and they should be called to account for their grossly negligent actions and willful misdeeds. And although they must accept the inevitable day-by-day criticism directed their way by the ever-present disgruntled resident, they should be spared the pain and expense that follows hypercritical attacks.

We think it is good that more and more of our citizens cast a watchful and constructively critical eye

upon the operations of government. This is as it should be. It serves a very useful purpose, not the least of which is to motivate officials to adhere as closely as may be possible to the law's mandates. While we have indicated that we believe that these appellants have been overly-sensitive in their criticisms of their township supervisors' overall performance, we have also suggested above, and repeat here, that the supervisors are not without fault. While the appellants must agree with us that the absolute can never be attained, so must the supervisors agree that had they strived for the more nearly perfect performance, it is very likely that this action would not have been instituted.

### ORDER

And now, July 9, 1971, in accordance with the findings and conclusions set forth above, it is directed that a further hearing be scheduled forthwith for the purpose of, and limited to, the presentation of evidence, if any there be, that the township suffered a net loss or losses by reason of the late payments of the capital improvement loan installment and of the tax anticipation loan.