**In Re: Petition for ATTORNEY RIDGEBURY TOWNSHIP AUDITORS**

**Appeal of: Ridgebury Township Auditors.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2008.
Decided Jan. 9, 2009.

Jeffrey P. Osmond, Towanda, for appellant.

Jonathan P. Foster, Athens, for appellee.

BEFORE: FRIEDMAN, Judge [1], and SIMPSON, Judge, and BUTLER, Judge.

OPINION BY Judge SIMPSON.

The Ridgebury Township Auditors (Auditors) seek review of an order of the Court of Common Pleas of Bradford County (trial court) that set aside the Auditors' surcharge of the Township Supervisors (Supervisors), arising from the purchase of a Caterpillar wheel loader. In a bifurcated trial, the sole issue before the trial court was whether Ridgebury Township (Township) suffered a loss as a result of the Supervisors' actions. The trial court concluded the Township did not suffer a loss and dismissed the surcharge. Upon review, we affirm.

The Supervisors sought to purchase a wheel loader for the Township. In October 2004, they considered the purchase of a Volvo wheel loader. The dealer quoted a price of $98,580.00. The Supervisors subsequently authorized the Township secretary to apply for a loan, to use money from the Township's equipment fund, and to take the balance from a certificate of deposit. Several months later, when delivery had not been made, the Supervisors rescinded the contract for the Volvo wheel loader and instead ordered a Caterpillar wheel loader for $99,838.00.

The Auditors found the Supervisors unintentionally failed to follow the statutorily required public bidding process in purchasing the Caterpillar wheel loader, and the Supervisors improperly used funds from the Township's liquid fuel fund. They concluded these irregularities caused a loss to the Township under Section 907(a) of the Second Class Township Code (Code),[2] 53 P.S. § 65907(a). The Auditors calculated a loss of $1,745.91, the sum of 1) the difference between the costs of the two wheel loaders ($1,248.00), and 2) the amount of forgone interest, had the funds remained in the liquid fuel fund ($418.91). The Auditors then filed notices of surcharge against the Supervisors, who appealed the surcharge to the trial court.

The esteemed trial court dismissed the surcharge. The trial court first rejected the Auditors' contention that the Township lost $418.91 in forgone interest. Uncontroverted evidence showed the Township earned a greater amount of interest with the money in the general fund than would have accrued if funds remained in the liquid fuel fund.

The trial court also analyzed the Auditors' reliance on *In re Lilly*, 341 Pa. 171, 19 A.2d 92 (1941), which interpreted a prior version of the statutory language dealing with surcharge in the absence of intent to violate the law. The case seemed to agree with the Auditors' position that any expenditure exceeding the amount ap-

---

1. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

2. Act of May 1, 1933, P.L. 103, *as amended.*

propriated must be regarded as a financial loss, even if the township received a benefit resulting in no actual pecuniary loss.

After *Lilly*, however, the General Assembly amended the term "financial loss" to "loss." Thus, the trial court presumed the General Assembly meant the amendment of the language concerning auditors' surcharges to abrogate the holding of *Lilly*. The trial court interpreted "loss" according to its common and approved usage. Using a dictionary definition, the trial court construed "loss" as the amount the cost of something exceeds its selling price. Based on this definition, and on the credited testimony that the Caterpillar wheel loader was more desirable than the Volvo model, the trial court concluded the Supervisors' increased expenditure was justified and did not constitute a loss to the Township.

Finally, the trial court recommended this Court affirm the decision and end a wasteful political feud between the Auditors and the Supervisors. The Auditors' appeal of the trial court's decision is now before us for disposition.

■ On appeal,[3] the Auditors argue the trial court erred in dismissing the surcharges where the preponderance of the evidence supports those surcharges. In addition, the Auditors assert the trial court erred in bifurcating the trial and misapplied the burden of proof by directing the Auditors to prove the Township's loss rather than considering the Auditors' report as prima facie correct. Finally, the Auditors contend the trial court's decision conflicts with public bidding requirements and public policy.

### I.

The relevant Code section reads:

> The board of auditors *shall surcharge* any elected or appointed officer *for the amount of any loss* to the township caused in whole or in part by the officer's act or omission in violation of law or beyond the scope of the officer's authority. *If the auditors find an absence of intent to violate the law or exceed the scope of authority and find the result of the officer's act could have been achieved by legal means and authorized procedures, the surcharge imposed shall be limited to the difference between the costs actually incurred by the township and the costs that would have been incurred had legal means and authorized procedures been employed.* Provisions of this section which limit the amount of surcharge do not apply to cases involving fraud or collusion on the part of the officers or to any penalty ensuing to the benefit of or payable to the Commonwealth.

53 P.S. § 65907(a) (emphasis added).

The Auditors[4] rely on *Lilly* in support of their assertion that a Township officer is

---

3. Where the trial court conducts a *de novo* hearing, our review is limited to a determination of whether the trial court manifestly abused its discretion or committed an error of law. *McLaughlin v. Centre County Hous. Auth.*, 151 Pa.Cmwlth. 292, 616 A.2d 1073 (1992).

4. The Auditors first argue they proved the Supervisors purchased the Caterpillar wheel loader without following the statutorily required public bidding procedure, and the Supervisors paid more for the loader than if they purchased the Volvo wheel loader. The Auditors assert the Supervisors admitted they purchased the Caterpillar wheel loader in violation of law without a public bidding process in the mistaken belief they were making the purchase under the Federal General Services Administration Purchasing Program. The Auditors contend the Supervisors' improper purchase of an unjustifiably more expensive wheel loader caused a loss to the Township, triggering the surcharge.

liable for a surcharge for any irregular expenditure even if the Township received a benefit resulting in no actual pecuniary loss. At the time of the decision in *Lilly,* the relevant statutory language provided that, "[a]ny officer, whose act or neglect has contributed to the *financial loss* of any township, shall be surcharged by the auditors with the amount of such loss." *Id.,* 341 Pa. at 173, 19 A.2d at 93 (emphasis added). Our Supreme Court relied on a prior decision and held "financial loss" included any expenditure in excess of those in conformity with the Code. The Court declined to depart from their previous interpretation of "financial loss" applying the principle that, "where, in a later act, the Legislature uses the same language as in a prior cognate statute, which had been construed by us, the presumption is that the language thus repeated is to be interpreted in the same way it previously had been when considering the earlier statute." *Id.* at 175–76, 19 A.2d at 94 (citations omitted).

In the current version of the Code, however, the Legislature replaced the term "financial loss" with the term "loss." 53 P.S. § 65907(a). Thus, we are not bound by our Supreme Court's interpretation of "financial loss" in *Lilly. See CSC Enters., Inc. v. State Police, Bureau of Liquor Control Enforcement,* 782 A.2d 57 (Pa. Cmwlth.2001) (where words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction).

We construe "loss" according to its common and approved usage. *See* Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a). Black's Law

Dictionary defines "loss," in relevant part, as "the disappearance or diminution of value.... When the loss is a decrease in value, the usual method of calculating the loss is to ascertain the amount by which a thing's original cost exceeds its later selling price." BLACK'S LAW DICTIONARY 963 (8th ed.2004).

■ Using this definition, any "loss" caused by the purchase of the Caterpillar wheel loader is limited to the amount spent in excess of the wheel loader's actual value. Based on credible expert testimony regarding machinery valuation, the trial court determined the Caterpillar wheel loader's higher resale value made it more desirable than the Volvo model, thereby justifying the increased expenditure and causing no loss. We discern no error in the trial court's determination that the purchase of the Caterpillar wheel loader did not cause the Township a loss.

## II.

The Auditors next object to the trial court's order to bifurcate the trial, asserting the trial court improperly shifted the burden from the Supervisors to the Auditors.

The figures and facts in an auditors' report are taken as prima facie correct against township officers who bear the burden to establish the validity of any credits they claim. Section 912 of the Code, 53 P.S. § 65912. The Auditors assert that when the trial court bifurcated the matter directing the Auditors to prove a loss, it misapplied the burden of proof,

---

Here, the trial court narrowed the scope of the trial to the issue of whether the Supervisors' actions caused the Township a loss. The Auditors' first argument is irrelevant to their appeal, as it merely restates facts not in dispute. The Supervisors admitted they mistakenly violated public bidding requirements,

and that the Caterpillar wheel loader was more expensive than the Volvo model. The Auditors never alleged fraud or bad faith on the part of the Supervisors; thus, the dispositive issue was whether the Township suffered a loss.

justifying, at minimum, a remand for a new trial.

■ The Auditors, however, never objected to the trial court's bifurcation order; therefore, a challenge to the propriety of the bifurcation is waived. *See* Pa. R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal).[5]

■ The Auditors also contend the trial court erred in misapplying the burden of proof. They complain the trial court originally ordered the Auditors to prove a financial loss to the Township. After the Auditors proved a financial loss within the meaning of *Lilly*, the trial court then changed course by stating financial loss was not the applicable standard. The Auditors conclude this is reversible error as it would be impossible for them to succeed before such an inconsistent tribunal.

We need not reach this issue as the Auditors failed to object to the standard of proof before the trial court and thus waived the issue. *See K.J. v. Pa. Dep't of Pub. Welfare*, 767 A.2d 609, 612 (Pa. Cmwlth.2001) (holding waiver of objection to standard of proof where the appellant "failed to raise the issue before any proceeding at the agency level and has set forth the argument for the first time in this appeal."). Additionally, the Auditors waived the issue by omitting it from their Pa. R.A.P.1925(b) Statement of Matters Complained of on Appeal. Certified Record at 53; *Commonwealth v. Butler*, 571 Pa. 441, 812 A.2d 631 (2002). Thus, we need not reach this issue.[6]

### III.

■ As a final issue, the Auditors argue the trial court's decision conflicts with public bidding requirements for municipal contracts and is contrary to public policy. They contend the statutory requirement for public bidding serves to invite competition and guard against fraud, corruption, favoritism, and extravagance. The Auditors argue the trial court's decision allows township officers to disregard public bidding requirements so long as the illegally purchased service or material was equivalent in value to the price paid. They conclude the legislature could not have intended such an absurd result.

---

5. In any event, the decision to bifurcate is entrusted to the sound discretion of the trial court, which is in the best position to evaluate the necessity for such measures. *Gallagher v. Pa. Liquor Control Bd.*, 584 Pa. 362, 883 A.2d 550 (2005). Here, the trial court explained its decision to bifurcate, stating: "[b]ecause the parties could not agree on the raw financial data, and because [the Auditors'] theory of the meaning of 'financial loss' seemed dubious, the court, for reasons of judicial economy, ordered bifurcation of trial." Reproduced Record at 14a. No abuse of discretion is apparent in this explanation.

6. If we addressed the merits of this issue, we would conclude the trial court's misapplication of the burden of proof constitutes harmless error. Misapplication of the burden of proof constitutes harmless error when the burdened party presents evidence such that it does not lose summarily and the fact-finder decides the case on evidence presented by both sides. *City of Phila. v. Civil Serv. Comm'n*, 824 A.2d 346 (Pa.Cmwlth.2003); *Haygood v. Civil Serv. Comm'n*, 133 Pa. Cmwlth. 517, 576 A.2d 1184 (1990).

Here, both parties presented evidence as to the price of the respective wheel loaders. The Supervisors also presented expert witness testimony regarding the increased value of the Caterpillar wheel loader as compared to the Volvo model. The trial court did not summarily dismiss the surcharge actions for failure to satisfy a burden of proof. Instead, it weighed the conflicting evidence and concluded, based on substantial evidence, the Supervisors' increased expenditure for the Caterpillar wheel loader was justified by its increased value. Thus, we would conclude the trial court's application of the burden of proof was harmless error.

Contrary to the Auditors' assertions, the trial court's decision does not eliminate the statutory requirement for public bidding in municipal contracts. Rather, the decision applies the statutory limitations on surcharges for unintentional violations of law.

Further, the decision does not contravene public policy by allowing township officers to intentionally disregard public bidding requirements and avoid surcharge. The Code prevents this outcome. The statutory limitations on surcharges for unintentional violations of law "*do not apply to cases involving fraud or collusion on the part of the officers* or to any penalty ensuing to the benefit of or payable to the Commonwealth." 53 P.S. § 65907(a) (emphasis added). Thus, the trial court decision recognizes the legislature's policy decision to limit surcharges arising from unintentional conduct which causes no loss, while still preserving the statutory requirement for public bidding in municipal contracts.

Based on the foregoing, we affirm.

## ORDER

AND NOW, this 9th day of January, 2009, the order of the Court of Common Pleas of Bradford County is **AFFIRMED.**